# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 31790

IN RE: SRBA CASE NO. 39576 (SUBCASE 91-63) RE: OWNERSHIP OF WATER RIGHTS.

--------------------------------------------------------

UNITED STATES OF AMERICA,

    Appellant-Cross Respondent,

v.

PIONEER IRRIGATION DISTRICT, SETTLERS IRRIGATION DISTRICT,

    Respondents,

and

NAMPA & MERIDIAN IRRIGATION DISTRICT, FARMERS COOPERATIVE DITCH COMPANY, BOISE VALLEY IRRIGATION DISTRICT, NEW DRY CREEK DITCH COMPANY, EUREKA WATER COMPANY, BALLENTYNE DITCH COMPANY, EAGLE ISLAND WATER USERS, THURMAN MILL DITCH COMPANY, SOUTH BOISE WATER COMPANY; FARMERS UNION DITCH COMPANY, CANYON COUNTY WATER COMPANY, MIDDLETON MILL DITCH COMPANY, MIDDLETON IRRIGATION ASSOCIATION; COMMITTEE OF NINE, TWIN FALLS CANAL COMPANY, NORTH SIDE CANAL COMPANY, A & B IRRIGATION DISTRICT, BURLEY IRRIGATION DISTRICT, FALLS IRRIGATION DISTRICT, ABERDEEN-SPRINGFIELD CANAL, FREMONT-MADISON IRRIGATION DISTRICT, PEOPLES CANAL & IRRIGATION, SNAKE RIVER VALLEY IRRIGATION, IDAHO IRRIGATION DISTRICT, EGIN

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, May 2006 Term

2007 Opinion No. 41

Filed: March 9, 2007

Stephen W. Kenyon, Clerk

BENCH CANAL INCORPORATED, )
NORTH FREMONT CANAL SYSTEM, )
PROGRESSIVE IRRIGATION DISTRICT, )
ENTERPRISE IRRIGATION DISTRICT, )
NEW SWEDEN IRRIGATION DISTRICT, )
HARRISON CANAL & IRRIGATION, )
BURGESS CANAL & IRRIGATION, )
PROGRESSIVE IRRIGATION DISTRICT, )
ENTERPRISE IRRIGATION DISTRICT, )
NEW SWEDEN IRRIGATION DISTRICT, )
HARRISON CANAL & IRRIGATION, )
BURGESS CANAL & IRRIGATION, BOISE )
PROJECT BOARD OF CONTROL, NEW )
YORK IRRIGATION DISTRICT, WILDER )
IRRIGATION DISTRICT, BOISE-KUNA )
IRRIGATION DISTRICT, BIG BEND )
IRRIGATION, )
 )
    **Respondents-Cross Appellants.** )

Appeal from the Snake River Basin Adjudication, District Court of the Fifth Judicial District of the State of Idaho, Twin Falls County. Honorable John M. Melanson, District Judge.

The decision of the Snake River Basin Adjudication court is <u>affirmed in part and remanded in part</u>.

David L. Negri, United States Department of Justice, attorneys for appellant-cross respondent. Kathryn E. Kovacs argued.

Moffatt, Thomas, Barrett, Rock & Fields, Chartered, Boise, attorneys for respondents, Pioneer Irrigation District and Settlers Irrigation District.

Stoppello & Kiser, Boise, attorneys for respondents-cross appellants Farmers Union Ditch Company, Canyon County Water Company, Middleton Irrigation Association, and Middleton Mill Ditch Company.

Ringert Clark Chartered, Boise, attorneys for respondents-cross appellants Ballentyne Ditch Company, Boise Valley Irrigation Ditch Co., Eagle Island Water Users Association, Eureka Water Co., Farmers Cooperative Ditch Co., Nampa & Meridian Irrigation District, New Dry Creek Ditch Company, South Boise Water Company and Thurman Mill Ditch Co. S. Bryce Farris argued.

Barker, Rosholt & Simpson LLP, Boise, attorneys for respondents-cross appellants Boise Project Board of Control, et al., and Committee of Nine, et al. Albert P. Barker argued.

State of Idaho, Department of Natural Resources Division, Boise. Michael C. Orr argued.

SCHROEDER, Chief Justice.

This is a water rights case arising from the Snake River Basin Adjudication (SRBA) regarding ownership interests of the United States and various irrigation entities. The SRBA court ruled that the United States has nominal legal title to the water rights at issue and the irrigation entities hold equitable title in trust for their landowners. The United States appealed to this Court. Several irrigation entities filed cross-appeals.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

The United States Bureau of Reclamation (United States or BOR) filed water right claims for irrigation storage, irrigation from storage, and other storage rights from Arrowrock Dam and Reservoir, Lucky Peak Dam and Reservoir, and Anderson Ranch Dam and Reservoir (collectively the Boise Project). These three projects were authorized and developed pursuant to the Reclamation Act of 1902 and its subsequent amendments. The irrigation entities have contracts with the BOR for the storage and delivery of the project water. The irrigation entities filed separate claims to the same water rights consistent with their respective uses.

The Idaho Department of Water Resources (IDWR) recommended that the water rights be in the name of the BOR and that the claims filed by the irrigation entities be disallowed. The irrigation entities filed several objections to IDWR's recommendations.

While the issues were pending before the Special Master, counsel for several of the irrigation entities moved to consolidate the issue of ownership as between the BOR and the irrigation entities, recognizing that there were other issues that varied among the water rights for the three facilities and that the delivery contracts varied between the entities. The SRBA court issued an Order Separating and Consolidating Common Issue From Subcases; Order Rescinding

Order of Reference to Special Master as to Consolidated Issue; Order Designating Issue as Consolidated Subcase 91-63; Notice of Scheduling and Status Conference on Consolidated Issue (June 2003 Order). The June 2003 Order permitted parties to the adjudication to participate as parties to the consolidated subcase that were not already participating. The parties to the subcase were required to file a statement of issues for purposes of determining whether the issue of ownership interest could be decided as a matter of law. All parties characterized the issue of ownership as a question of law or a mixed question of fact and law. Thereafter, Farmers Union Ditch Company, *et al.*; the United States Department of Interior, Bureau of Reclamation; Ballentyne Ditch Company, *et al.*; Pioneer and Settlers Irrigation Districts; and Boise Project Board of Control, *et al.*; and the Conservation Objectors all filed motions for summary judgment asserting no genuine issue of material fact on the issue of ownership.

Following cross-motions for summary judgment, the SRBA court issued an order concluding that the United States has nominal legal title to the Boise Project water rights and the irrigation entities hold equitable title in trust for their landowners. The SRBA court stated it would include a Remark under I.C. § 42-1411(2) indicating that the irrigation entities hold equitable title to the Boise Project water rights, stating that this would not constitute a collateral attack on the prior decrees and licenses that vested sole ownership with the United States since it was "being asked to clarify existing law against which the water right holders were entitled to rely." After the SRBA court issued its order including such a Remark, the irrigation entities requested the court to reconsider the language of the Remark. The request was granted, and in March 2005, the SRBA court issued an Order on Motion for Reconsideration and Order Modifying Court's January 14, 2005, *Final Order*, which included the following language in the Remark:

> Although the name of the United States of America acting through the Bureau of Reclamation appears in the Name and Address sections of this partial decree, the ownership of this water right is divided. The United States Bureau of Reclamation holds nominal legal title. Beneficial or equitable title to this water right is held in trust by the irrigation organizations, in the quantities and/or percentages specified in the contracts between the Bureau of Reclamation and the irrigation organizations, for the benefit of the landowners entitled to receive distribution of this water from the respective irrigation organizations pursuant to Idaho law. As a matter of law, this interest is appurtenant to the lands within the boundaries of or served by such irrigation organization. The ownership of this water right is derived from law and is not based exclusively on the contracts between the Bureau of Reclamation and the irrigation organizations.

4

The United States appeals, arguing that this Court should agree with the recommendation of the IDWR.  Ballentyne, *et al*. and Farmers Union Ditch Co., *et al*. argue on cross-appeal that the SRBA court erred when failing to include in the Remark the identity of each irrigation entity and the quantity of water beneficially owned by each irrigation entity.  The issues in this case concern irrigation rights and interests.  Questions concerning such matters as flood control, environmental uses, or other issues are outside the scope of this decision.

**II.**
**STANDARD OF REVIEW**

> When this Court reviews a district court's decision on summary judgment, this Court employs the same standard used by the district court in reviewing the motion.  The facts will be construed in favor of the non-moving party.  "Summary judgment is appropriate if there are no genuine issues of material fact and the case can be decided as a matter of law."

*Ada County Bd. of Equalization v. Highlands, Inc.*, 141 Idaho 202, 205-06, 108 P.3d 349, 352-53 (2005) (internal citations omitted).  This Court exercises free review over questions of law.  *Id.*

**III.**
**ANY RIGHTS HELD BY THE UNITED STATES ARE SUBJECT TO RIGHTS OF THE BENEFICIAL USERS THAT ARE SERVED BY THE IRRIGATION DISTRICTS**

The "Reclamation Act of 1902 set in motion a massive program to provide federal financing, construction, and operation of water storage and distribution projects to reclaim arid lands in many Western States."  *Orff. v. United States*, 545 U.S. 596, 598, 125 S.Ct. 2606, 2608 (2005) (citing *California v. United States*, 438 U.S. 645, 650, 98 S.Ct. 2985, 2988 (1978)).  Federal law provides that the United States holds title to Reclamation projects works and the right to manage and operate Reclamation projects.  43 U.S.C. §§ 491, 498.  While "[t]he history of the relationship between the Federal Government and the States in the reclamation of the arid lands of the Western States is both long and involved . . . through it runs the consistent thread of purposeful and continued deference to state water law by Congress." *California*, 438 U.S. at 653, 98 S.Ct. at 2990.  Even before many of the Western States had been admitted to the Union, Congress deferred to the growing local law.  *Id*. at 654, 98 S.Ct. at 2990 ((citing *Broder v. Water Co*., 101 U.S. 274, 276 (1879), in which the Court noted that local appropriation rights were "rights which the government had, by its conduct, recognized and encouraged and was bound to

protect"). Section 8 of the Reclamation Act provides, "Nothing in this Act shall be construed as affecting or intended to affect or to in any way interfere with the laws of any State or Territory relating to the control, appropriation, use, or distribution of water used in irrigation." 43 U.S.C. § 383. The United States Supreme Court has determined that where the federal government has undertaken reclamation projects for public benefit, the United States retains control of the operation of the project and distribution of its benefits to ensure they are properly used. *Arizona v. California*, 373 U.S. 546, 589, 83 S.Ct. 1468, 1492-93 (1963). However, "the Act clearly provided that state water law would control in the appropriation and later distribution of the water." *California*, 438 U.S. at 664, 98 S.Ct. at 2995.

In Idaho it is "a well-settled rule of public policy that the right to the use of the public water of the state can only be claimed where it is applied to a beneficial use in the manner required by law." *Alrethesen v. Wood River Land Co.*, 40 Idaho 49, 60, 231 P. 418, 422 (1924). Under the constitutional method of appropriation, appropriation is completed upon application of the water to the beneficial use for which the water is appropriated. When following the constitutional method, one "must depend upon actual appropriation, that is to say, actual diversion and application to beneficial use." *Basinger v. Taylor*, 36 Idaho 591, 598, 211 P. 1085, 1086-87 (1922). Under the statutory method of appropriation, the appropriation is not complete and a license will not issue until there is proof of application to beneficial use for the purpose for which it was originally intended. I.C. §§ 42-217, 42-219. Under either the constitutional or statutory method of appropriation, the appropriator must apply the water to a beneficial use in order to have a valid water right in Idaho. Since 1971 a party seeking a surface water right must file an application with the IDWR, obtain a permit, and perfect that right by obtaining a license. I.C. § 42-201, *et seq*. The BOR followed that process and obtained licenses for Lucky Peak, Arrowrock, and Anderson Ranch reservoirs. Thereafter, the United States and the irrigation districts entered into contracts that provide for the repayment to the United States for the costs of constructing the federal facilities and the continuing operation and maintenance costs. There is no dispute that the irrigation districts have fully repaid the construction costs, except for Lucky Peak, and they have paid for development of the stored water.

There is no dispute that the BOR does not beneficially use the water for irrigation. It manages and operates the storage facilities. Irrigation of the lands serviced by the irrigation districts was the basis upon which original water right licenses were issued. Without the

6

diversion by the irrigation districts and beneficial use of water for irrigation purposes by the irrigators, valid water rights for the reservoirs would not exist under Idaho law. The beneficial use theme is consistent with federal law. The Reclamation Act provides that "the right to the use of water acquired under the provisions of this Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, measure, and limit of the right." 43 U.S.C. § 372.

The United States argues that the SRBA court erred when it relied on federal law in reaching its conclusion that the United States holds only legal title to the water rights at issue. It asserts that *Ickes v. Fox*, 300 U.S. 82, 57 S.Ct. 412 (1937), *Nebraska v. Wyoming*, 325 U.S. 589, 65 S.Ct. 1332 (1945), and *Nevada v. U.S.*, 463 U.S. 110, 103 S.Ct. 2906 (1983), were based on the law of the particular states involved and the individual contracts at issue, and that the court erred in reading these cases as independent federal law that overrides state law. Conversely, the irrigation entities contend that *Ickes* and its progeny are binding legal precedent that guides the actions of this Court. They further argue that the correct application of those cases and the Idaho Code and Constitution lead to the conclusion that the United States holds only nominal legal title to the Boise Project water rights. A review of the cases makes it clear that federal law defers to state law in determining the rights to water in the reclamation projects.

In *Ickes v. Fox* the Bureau of Reclamation attempted to reduce water deliveries to irrigators who received their water under repayment contracts. The government argued that it had acquired water rights in its own name under state law, as section 8 of the Reclamation Act required and that the irrigators merely had contract rights against it, not property rights in the water. The irrigators argued they owned the rights, asserting that the water rights at issue were made by the Reclamation Act to be "appurtenant to the land irrigated," *Ickes*, 300 U.S. 82, 93, 57 S.Ct. 412, 416, and by a Washington statute, were "to be and remain appurtenant to the land." *Id.* at 94, 57 S.Ct. at 416. The contract provided that the landowners "were to initiate the rights to the use of the water, which rights were to be and continue to be forever appurtenant to designated lands owned by such shareholders." *Id.*

The United States Supreme Court ruled in favor of the irrigators, noting that the irrigators had made all required payments and complied with all their obligations to the government. *Id.* According to the Supreme Court, the irrigators had therefore, "long prior to the issue of the notices and orders here assailed, . . . acquired a vested right to the perpetual use of the waters as appurtenant to their lands." *Id.* The Reclamation Act and Washington law provided that the

7

"basis, the measure, and the limit of the right" was beneficial use. *Id.* The government argued that it had put the water to beneficial use by diverting, storing, and distributing the water. *Id.* at 95, 57 S.Ct. at 416-17. The Supreme Court disagreed, explaining that:

> [a]ppropriation was made not for the use of the government, but, under the Reclamation Act, for the use of the landowners; and by the terms of the law and of the contract already referred to, the water rights became the property of the landowners, wholly distinct from the property right of the government in the irrigation works.

*Id.*

Under the Desert Land Act (and perhaps before) Congress severed the land and the waters constituting the public domain "and established the rule that for the future the lands should be patented separately." *Id.* Acquiring land did not carry with it a water right. Rights to water in non-navigable streams were reserved to the states. *Id.* Both state law and the Reclamation Act commanded that the United States held no property right in the water:

> And in those states, generally, including the state of Washington, it long has been established law that the right to the use of water can be acquired only by prior appropriation for a beneficial use; and that such right when thus obtained is a property right, which, when acquired for irrigation, becomes, by state law and here by express provision of the Reclamation Act as well, part and parcel of the land upon which it is applied.

*Id.* at 95-96, 57 S.Ct. at 417.

In *Nebraska v. Wyoming*, the United States claimed it held title to all the unappropriated water of the North Platte River and that the ownership derived from its underlying ownership of the lands and waters. Having withdrawn from public entry certain lands in Nebraska and Wyoming for two projects, the government made the required section 8 filings on behalf of the government and applied to the states to construct canals and ditches. "The orders granting the applications fixed the time for completion of the canal, for application of the water to the land, and for proof of appropriation." 325 U.S. at 613, 65 S.Ct. at 1348. Water users contracted with the government for use of the water and the irrigation districts later assumed those contracts. *Id.* Afterward, the irrigation districts submitted proof of beneficial use on behalf of the project's water users. *Id.* The state then issued decrees and certificates in favor of the individual landowners, which named the landowners as appropriators. *Id.* These certificates designated the number of acres included, the use for which appropriation was made, the amount of

appropriation, and the priority date. The contracts between the irrigation districts provided that after the stored water was released, it was under the control of the state. *Id.*

Under those facts, *Ickes* controlled. 325 U.S. at 613-14, 65 S.Ct. at 1348-49. Again, the Supreme Court stated, "[t]he property right in the water right is separate and distinct from the property right in the reservoirs, ditches or canals," and was "acquired by perfecting an appropriation, *i.e.*, by an actual diversion followed by an application within a reasonable time of the water to a beneficial use." *Id.* at 614, 65 S.Ct. at 1349. The Court reiterated the rule stated in *Ickes*: "the right to the use of water acquired under the provisions of [the Reclamation] Act shall be appurtenant to the land irrigated, and beneficial use shall be the basis, the measure, and the limit of the right." *Id.*

*Nebraska v. Wyoming*, 463 U.S. 110, 103 S.Ct. 2906 (1983), also provides guidance. In 1874, President Ulysses S. Grant created the Pyramid Lake Indian Reservation, which includes Pyramid Lake. 463 U.S. at 115, 103 S.Ct. at 2910. Pursuant to the Reclamation Act, the Department of the Interior withdrew about 200,000 acres in western Nevada to irrigate an area near Fallon with water from the Truckee and Carson Rivers. *Id.* The project was called the Newlands Project. *Id.* To accomplish its goals, the government constructed Lahontan Dam, which impounded water from the Truckee and the Carson. *Id.* at 116, 103 S.Ct. at 2911. Before the project came into operation, a number of private landowners established rights to water in the Truckee River under Nevada law. *Id.* Thereafter, the government asserted rights on behalf of the Pyramid Lake Tribe, which led to what is known as the *Orr Ditch* litigation.

A special master issued a report and proposed decree in 1924. *Id.* at 117, 103 S.Ct. at 2911. The tribe and the government were awarded separate appropriations and priority dates, the government's appropriation being for the Newlands Project. *Id.* The *Orr Ditch* litigation ultimately concluded. In 1973 the government filed suit seeking additional rights for the tribe. *Id.* at 118, 103 S.Ct. at 2912. The government named as defendants all persons claiming rights to the Truckee and its tributaries in Nevada; including the defendants in the *Orr Ditch* litigation and their successors, individual farmers who owned land in the project, and an irrigation district. *Id.*

The defendants argued that the *Orr Ditch* litigation was res judicata against the government and the tribe. *Id.* at 119, 103 S.Ct. at 2913. The government responded that the court below simply approved a reallocation of the water decreed in the *Orr Ditch* litigation to a

9

single party (the United States) from reclamation use to reservation use. The Court did not accept this theory. *Id.* at 121, 103 S.Ct. at 2914. Before holding that res judicata precluded the government from attempting to reallocate the water, the Court had to identify whose water the reclamation water was. It was not the government's. The Court observed that in Nevada, beneficial use by actual application on the land was how one perfected a water right for agricultural purposes. *Id.* at 126, 103 S.Ct. at 2916. Relying on *Ickes* and *Nebraska*, the Court held that "the Government is completely mistaken if it believes that the water rights confirmed to it by the *Orr Ditch* decree in 1944 for use in irrigating lands within the Newlands Reclamation Project were like so many bushels of wheat, to be bartered, sold, or shifted about as the Government might see fit." *Id.* The Court explained, "the law of the relevant State and the contracts entered into by the landowners and the United States make . . . very clear" that:

> [o]nce these lands were acquired by settlers in the Project, the Government's 'ownership' of the water rights was at most nominal; the beneficial interest in the rights confirmed to the Government resided in the owners of the land within the Project to which these water rights became appurtenant upon the application of Project water to the land.

*Id*. (emphasis added). Hence, the concept of nominal legal title.

The contracts in *Nevada v. U.S.*, which the Court explained were similar to those in *Ickes* and *Nebraska v. Wyoming*, were of five different forms. *Nevada,* 463 U.S. at 126 n.9, 103 S.Ct. at 2916 n.9. Two provided for an exchange of a vested water right by the landowner in return for the right to use project water. *Id.* The other three provided the landowner with a water right in the amount that may be beneficially applied to a specific tract of land. *Id.*

While the state laws and specific contracts may differ in the above cases, the U.S. Supreme Court's opinions provide guidance in reaching a conclusion here. A common theme throughout these cases is the recognition of the connection between beneficial use of water and ownership rights. The underlying principle of the state law, which requires application of the water to beneficial use before a water right is perfected, is the same. In Idaho the appropriator must apply the water to a beneficial use in order to have a valid water right under both the constitutional method of appropriation and statutory method of appropriation. *Basinger*, 36 Idaho at 598, 211 P. at 1086-87; I.C. §§ 42-217 & 42-219. The requirement of beneficial use is repeatedly referred to throughout the Idaho Code. Beneficial use is enmeshed in the nature of a water right, which is explained in I.C. § 42-101, as follows:

10

Water being essential to the industrial prosperity of the state, and all agricultural development throughout the greater portion of the state depending upon its just apportionment to, and economical use by, those making a beneficial application of the same, its control shall be in the state, which, in providing for its use, shall equally guard all the various interests involved. All the waters of the state, when flowing in their natural channels, including the waters of all natural springs and lakes within the boundaries of the state are declared to be the property of the state, whose duty it shall be to supervise their appropriation and allotment to those diverting the same therefrom for any beneficial purpose, and the right to the use of any of the waters of the state for useful or beneficial purposes is recognized and confirmed; and the right to the use of any of the public waters which have heretofore been or may hereafter be allotted or beneficially applied, shall not be considered as being a property right in itself, but such right shall become the complement of, or one of the appurtenances of, the land or other thing to which, through necessity, said water is being applied; and the right to continue the use of any such water shall never be denied or prevented from any other cause than the failure on the part of the user thereof to pay the ordinary charges or assessments which may be made to cover the expenses for the delivery of such water.

Further, I.C. § 42-104 states, "The appropriation must be for some useful or beneficial purpose, and when the appropriator or his successor in interest ceases to use it for such purpose, the right ceases." Idaho Code § 42-201(1) provides in part: "All rights to divert and use the waters of this state for beneficial purposes shall hereafter be acquired and confirmed under the provisions of this chapter and not otherwise. . . . Such appropriation shall be perfected only by means of the application, permit and license procedure as provided in this title." As previously noted, in order to obtain a licensed water right in Idaho one must prove that the water has been applied to a beneficial use. I.C. § 42-217. The districts act on behalf of the landowners within the districts to put the water to beneficial use. It is that beneficial use that determines water right ownership. Finally, I.C. § 42-219(5) discusses beneficial use. That section applies to irrigation projects where the canals constructed cover an area of twenty-five thousand (25,000) acres or more, such as the projects here, and provides:

[T]he license issued shall be issued to the persons, association, company, corporation or irrigation district owning the project, and final proof may be made by such owners for the benefit of the entire project. It shall not be necessary to give a description of the land by legal subdivisions but a general description of the entire area under the canal system shall be sufficient. *The water diverted and the water right acquired thereby shall relate to the entire project and the diversion of the water for the beneficial use under the project shall be sufficient proof of beneficial use without regard as to whether each and every acre under the project is irrigated or not.*

11

I.C. § 42-219(5) (emphasis added).

There are several phrases used in the Idaho Constitution and the Idaho Code that signify that the beneficial users have an interest that is stronger than mere contractual expectancy. The Idaho Constitution provides that when water is appropriated or used for agriculture purposes, "such person . . . shall not thereafter, without his consent, be deprived of the annual use of the same." IDAHO CONSTITUTION art. XV § 4. This notion of a perpetual right is reiterated in the Idaho Code, which states, the "right to continue the beneficial use of such waters shall never be denied nor prevented for any cause other than the failure . . . to pay the ordinary charges or assessments." I.C. § 42-220. Idaho Code § 42-915 uses the word "title" and provides that once a water right becomes appurtenant to the land, title to the use of the water can never be affected by transfers of the ditch, canal, or by foreclosure:

> When any payment is made under the terms of a contract, by means of which payment a perpetual right to the use of water necessary to irrigate a certain tract of land is secured, said water right shall forever remain a part of said tract of land, and the title to the use of said water can never be affected in any way by any subsequent transfer of the canal or ditch property or by any foreclosure or any bond, mortgage or other lien thereon; but the owner of said tract of land, his heirs or assigns, shall forever be entitled to the use of the water necessary to properly irrigate the same, by complying with such reasonable regulations as may be agreed upon, or as may from time to time be imposed by law. And said payment for said water right shall be a release of any bond or mortgage upon the canal property of the person or company from whom such right is purchased or their successors or assigns, to the amount of such water right thus purchased and paid for, and said person or company whom such water right is purchased shall furnish to the party or parties purchasing such right a release, or a good and sufficient bond for a release, from said mortgage or bonded indebtedness to the amount of the water right thus purchased.

Irrigation districts act as trustees for the landowners managing the water right, and standing in place of the landowners in cases involving the appropriation of the water. I.C. § 43-316 ("title to all property . . . shall be held by such district in trust for . . . the uses and purposes set forth in this title.") Further, I.C. § 43-1829 provides that the districts hold the water rights in trust for the landowners.

The United States maintains that Idaho case law mandates that the irrigation districts do not have an ownership in the Boise Project water rights. It correctly states that Idaho law determines ownership, and the Reclamation Act does not independently define ownership rights.

12

To support its position that Idaho law does not require a beneficial user to hold title to water rights, it states the rule set forth in *Washington County Irr. Dist. v. Talboy*, 55 Idaho 382, 384, 43 P.2d 943, 945 (1935), that the project owner holds the water rights where an entity appropriates water for storage or irrigation project. Additionally, the United States notes that one who ultimately uses the water does not gain title to the water rights under *Nampa & Meridian Irr. Dist. v. Barclay*, 56 Idaho 13, 15-16, 47 P.2d 916, 918-19 (1935) (irrigation district applied for writ of prohibition directed to judge who entered an order requiring the district to serve and bring in as parties defendant all the water users of drainage district), and *Wilterding v. Green*, 4 Idaho 773, 777, 45 P. 134, 138 (1896) (issued prior to creation of Reclamation Act). Notably, none of these cases deals with the BOR or the Reclamation Act. In fact, the United States Supreme Court has indicated through *Ickes* and its progeny that a strong argument exists that the framers of the Reclamation Act did not intend to deprive the irrigation entities of an equitable interest in project water rights. The intent of the Reclamation Act was to allow large projects to be built, providing federal funds to states that were not able to build and maintain storage facilities alone. This is particularly significant in this case since the contracts between the United States and the irrigation districts provide for the repayment to the United States for the cost of constructing the federal facilities and the continuing operation and maintenance costs. The irrigation districts have fully repaid the construction costs, except for Lucky Peak, and they have paid for development of the stored water.

Finally, the United States insists that if this Court holds that the BOR owns the water rights at issue, there will not be a reduction of the irrigation entities' rights to use the water as they have for nearly a century, it will merely preserve the status quo. The irrigation entities counter that without an equitable interest, they are vulnerable. They argue that recent cases illustrate that the irrigation districts have few, if any, remedies when the United States breaches water distribution contracts. *See Orff*, 545 U.S. 596, 125 S.Ct. 2606; *Klamath Irrigation Dist. v. U.S.*, 67 Fed. Cl. 504 (2005). In *Klamath* the court held the water users had no constitutional takings claim and must rely on contractual remedies within their distribution contract. However, in *Orff* a group of individual irrigators sued the United Stated for breach and the Ninth Circuit Court of Appeals held since they were not third party beneficiaries, the United States was immune from the suit.

13

Based upon the United States Supreme Court cases, the Reclamation Act, the Idaho Constitution, Idaho statutory and case law, it is clear that the entity that applies the water to beneficial use has a right that is more than a contractual right. The irrigation entities in this case act on behalf of those who have applied the water to beneficial use and repaid the United States for the costs of the facilities. The irrigation districts hold an interest on behalf of the water users pursuant to state law, consistent with the Reclamation Act and U.S. Supreme Court cases that were properly recognized by the SRBA Court. To reflect this Court's analysis, the case is remanded to the district court to substitute the following remark for that adopted by the SRBA court:

> The name of the United States of America acting through the Bureau of Reclamation appears in the Name and Address sections of this partial decree. However, as a matter of Idaho constitutional and statutory law title to the use of the water is held by the consumers or users of the water. The irrigation organizations act on behalf of the consumers or users to administer the use of the water for the landowners in the quantities and/or percentages specified in the contracts between the Bureau of Reclamation and the irrigation organizations for the benefit of the landowners entitled to receive distribution of this water from the respective irrigation organizations. The interest of the consumers or users of the water is appurtenant to the lands within the boundaries of or served by such irrigation organizations, and that interest is derived from law and is not based exclusively on the contracts between the Bureau of Reclamation and the irrigation organizations.

## IV.

### THE SRBA COURT DID NOT ERR IN DECLINING TO INCLUDE IN THE REMARK THE IDENTITY OF EACH IRRIGATION ENTITY AND THE QUANTITY OF WATER BENEFICALLY OWNED BY EACH IRRIGATION ENTITY

Cross-appellants Ballentyne, et al., and Farmers Union Ditch Co., et al., requested that each partial decree include the identity of each irrigation entity that holds beneficial title to the water and the quantity of the water right owned. The SRBA court denied this request, reasoning that the IDWR could refer to the contracts in dispute. On cross-appeal, Ballentyne, et al. argues that this implies that its interest is contractual in nature, rather than being based upon appropriation and beneficial use. To further support its position, Ballentyne, et al. relies upon this Court's statement in *Nettleton v. Higginson*, 98 Idaho 87, 91, 558 P.2d 1048, 1052 (1977), "Only by having a specific list reciting the names of water users, with the dates of priority, amounts, and points of diversion can a system be administered." Both Ballentyne, et al., and Farmers Union Ditch Co., et al., assert that the identities and quantities are necessary for the

14

efficient administration of the water rights. Farmers Union Ditch Co., et al. also notes that I.C. § 42-1412(6) provides that the district court has a duty to enter a partial decree determining the nature and extent of the water rights which is the subject of the objection, or other matters which are the subject of the objection, and the court is required to include each element of the water right under I.C. 42-1411(2) and (3).

The United States contends the SRBA court was correct in its decision to deny cross-appellants' request. The United States argues that the identities and quantities do not need to be included in an exhibit since the contracts between the United States and the irrigation entitles define which organizations receive water and the quantity they may receive, noting that the Boise Project has operated successfully for almost a century without such specificity in decrees or licenses.

Idaho Code § 42-1411(2)(j) provides that "The director shall determine the following elements, to the extent the director deems appropriate and proper, to define and administer the water rights acquired under state law: . . . such remarks and other matters as are necessary for definition of the right, for clarification of any element of a right, or for administration of the right by the director." Ballentyne, et al.'s concern, that looking to the contracts between the BOR and the irrigation entities indicates that the rights held by the irrigation entities are based on contract, is alleviated when one considers that the SRBA court specifically stated that "ownership of this water right is derived from law and is not based exclusively on the contracts between the Bureau of Reclamation and the irrigation organizations." This Court has affirmed that ruling. The Boise Project water rights have been administered successfully without the specificity requested by the cross-appellants. This Court affirms the decision of the district court on this matter.

### V.
### CONCLUSION

The decision of the SRBA court is affirmed in part and remanded in part with direction to substitute this Court's remark for that adopted by the SRBA court.


Justices TROUT, EISMANN, BURDICK and JONES **CONCUR.**

15