**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 40974/40975**

IN RE SRBA, CASE NO. 39576, SUBCASE 00-91017 (BASIN-WIDE ISSUE 17 – DOES IDAHO LAW REQUIRE A REMARK AUTHORIZING STORAGE RIGHTS TO 'REFILL', UNDER PRIORITY, SPACE VACATED FOR FLOOD CONTROL).

--------------------------------------------------------

A&B IRRIGATION DISTRICT, BURLEY IRRIGATION DISTRICT, MILNER IRRIGATION DISTRICT, NORTH SIDE CANAL COMPANY, TWIN FALLS CANAL COMPANY, MINIDOKA IRRIGATION DISTRICT, AMERICAN FALLS RESERVOIR DISTRICT NO. 2 and BOISE PROJECT BOARD OF CONTROL,

    Appellants,

v.

STATE OF IDAHO, UNITED STATES OF AMERICA, AMERICAN FALLS RESERVOIR DISTRICT NO. 2, ABERDEEN-AMERICAN FALLS GROUND WATER DISTRICT, ABERDEEN-SPRINGFIELD CANAL COMPANY, BINGHAM GROUND WATER DISTRICT, BONNEVILLE-JEFFERSON GROUND WATER DISTRICT, JEFFERSON-CLARK GROUND WATER DISTRICT, MADISON GROUND WATER DISTRICT, MAGIC VALLEY GROUND WATER DISTRICT, NORTH SNAKE GROUND WATER DISTRICT, BLACK CANYON IRRIGATION DISTRICT, NEW YORK IRRIGATION DISTRICT, BIG WOOD CANAL COMPANY, BALLENTYNE DITCH COMPANY, BOISE VALLEY IRRIGATION DITCH COMPANY, CANYON COUNTY WATER COMPANY, EUREKA WATER COMPANY, FARMERS' CO-OPERATIVE DITCH COMPANY,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Boise, January 2014 Term

2014 Opinion No. 78

Filed: August 4, 2014

Stephen W. Kenyon, Clerk

**MIDDLETON IRRIGATION** )
**ASSOCIATION, INC., MIDDLETON MILL** )
**DITCH COMPANY, NAMPA & MERIDIAN** )
**IRRIGATION DISTRICT, NEW DRY** )
**CREEK DITCH COMPANY, PIONEER** )
**DITCH COMPANY, SETTLERS** )
**IRRIGATION DISTRICT, SOUTH BOISE** )
**WATER COMPANY, THURMAN MILL** )
**DITCH COMPANY, IDAHO POWER** )
**COMPANY, FREMONT-MADISON** )
**GROUND WATER DISTRICT, IDAHO** )
**IRRIGATION DISTRICT, UNITED CANAL** )
**COMPANY, CITY OF POCATELLO,** )
**UNITED WATER IDAHO, INC., PIONEER** )
**IRRIGATION DISTRICT,** )

  **Respondents.**

Appeal from the Snake River Basin Adjudication, State of Idaho.  Hon. Eric J. Wildman, District Judge.

Snake River Basin Adjudication Court's decision, <u>vacated.</u>

Barker, Rosholt & Simpson, LLP, Twin Falls, for appellants.  Travis L. Thompson argued in case number 40974 for appellant Surface Water Coalition and Albert P. Barker argued in 40975 for appellant Boise Project Board.

Fletcher Law Office, Burley, for appellants American Falls Irrigation District #2 and Minidoka Irrigation District.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho.  Michael C. Orr, Deputy Attorney General argued.

U.S. Department of Justice, Colorado, for respondent United States.

Arkoosh Law Offices, Boise, for respondent American Falls Reservoir District No. 2.

Racine Olson Nye Budge & Bailey, Chtd., Pocatello, for respondent Aberdeen-Springfield Canal Company, Bingham Ground Water District, Bonneville-Jefferson Ground Water District, Jefferson-Clark Ground Water District, Madison Ground Water District, Magic Valley Ground Water District, North Snake Ground Water District.

 McDevitt & Miller, Boise, for respondent Black Canyon Irrigation District, New York Irrigation District.

Hobdey & Hobdey, Gooding, for respondent Big Wood Canal Company.

2

Sawtooth Law Offices, PLLC, Boise, for appellants in 40975 and respondents in 40974. Ballentyne Ditch Company, Boise Valley Irrigation Ditch Company, Canyon County Water Company, Eureka Water Company, Farmers Co-operative Ditch Company, Middleton Irrigation District, Middleton Mill Ditch Company, Nampa & Meridian Irrigation District, New Dry Creek Ditch Company, Pioneer Ditch Company, Settlers Irrigation District, South Boise Water Company, Thurman Mill Ditch Company.  S. Bryce Farris argued for appellant in 40975.

James Tucker, Boise, for respondent Idaho Power.

Rigby, Andrus & Rigby, Rexburg, for respondents Fremont-Madison Ground Water District, Idaho Irrigation District, United Canal Company.  Jerry R. Rigby argued in 40974 .

Beeman & Associates, P.C., Boise, for respondent City of Pocatello.

Givens Pursley, Boise, for respondent United Water Idaho, Inc.  Christopher H. Meyer argued.

Moffatt, Thomas, Barrett & Rock, Boise, for respondent Pioneer Irrigation District.  Andrew J. Waldera argued in 40974.

---

BURDICK, Chief Justice

This appeal arises out of the Snake River Basin Adjudication (SRBA) court's decision on the following basin-wide issue: Does Idaho law require a remark authorizing storage rights to "refill," under priority, space vacated for flood control? The SRBA court concluded that a remark was not necessary because a storage water right that is filled cannot refill under priority before affected junior appropriators satisfy their water rights once. The court declined to address when the quantity element of a storage water right is considered filled. Seven Magic Valley irrigation districts and canal companies (collectively the "Surface Water Coalition") appeal this decision in Docket No. 40974. The Boise Project Board appeals this decision in Docket No. 40975. Because both cases appeal the same decision of the SRBA court and have significant overlap, we address them together in this opinion.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The basis of this appeal, Basin-Wide Issue 17, arose from several individual SRBA subcases that involved the question of how filling a reservoir after the release of flood control waters should be addressed on the face of partial decrees for storage water rights in the Palisades and American Falls Reservoirs. Both the State and the Bureau of Reclamation (Reclamation)

3

took the position that a remark is necessary on the face of a water right to authorize the right to refill. Reclamation wanted the following remark under the quantity element of its water right: "This water right includes the right to refill under the priority date of this water right to satisfy the United States' storage contracts." The State disagreed with the language of Reclamation's proposed refill remark. It proffered the following alternate remark, arguing that it more accurately reflects Idaho law on storage refill:

> This right is filled for a given irrigation season when the total quantity of water that has been accumulated to storage under this right equals the decreed quantity. Additional water may be stored under this right but such additional storage is incidental and subordinate to all existing and future water rights.

As a result of the remarks proposed by Reclamation and the State, a dispute arose over Idaho law on storage refill. Several irrigation districts in the Treasure Valley, whose storage water rights were already decreed without a remark on refill rights, were concerned that the outcome of the storage refill issue might affect their right to the use of storage water. Therefore, Reclamation, the Surface Water Coalition, and the Boise Project Board, among others, filed a petition to designate a basin-wide issue arguing that the issue of storage refill was an issue of basin-wide significance and should be resolved in a basin-wide proceeding. In addition, the Surface Water Coalition asserted that the following two issues should also be addressed as part of the basin-wide proceeding to clarify and guide administration of storage water rights:

> (1)    [Whether] [t]he storage right holder determines when to divert water to storage in order to maximize the beneficial use of water under this right.
>
> (2)    [Whether] [t]he beneficial use under this right is fully satisfied when the water stored and available for beneficial use equals the capacity of the reservoir.

The SRBA court entered an order granting the petition and designating the following issue as Basin-Wide Issue 17: "Does Idaho law require a remark authorizing storage rights to 'refill,' under priority, space vacated for flood control?" The court recognized that the issue was fundamentally an issue of law, noting that "[w]hen asked if the issue could be addressed in a basin-wide setting without the need to develop factual records specific to individual reservoirs, the Petitioners represented that little, if any, factual record development would be necessary." Accordingly, the court limited the scope of the basin-wide proceeding as follows:

> [T]he Court will not consider the specific factual circumstances, operational history, or historical agreements associated with any particular reservoir in conjunction with this basin-wide issue. Such specific factual inquiries do not lend

4

themselves to review in a basin-wide proceeding involving many parties and many reservoirs. Rather, the basin-wide issue will be limited to the above-identified issue of law.

The SRBA court declined to address either of the Surface Water Coalition's additional proposed issues pertaining to how a storage right is initially filled, finding that these issues were not well situated for resolution in a basin-wide proceeding. In declining to address the Surface Water Coalition's issues regarding fill, the court reasoned:

> An on-stream reservoir alters the stream affecting the administration of all rights on the source. Accordingly, some methodology is required to implement priority administration of affected rights. Addressing the issue of reservoir fill may require factual inquiries, investigation and record development specific to a given reservoir, including how the State accounts for fill in each individual reservoir under its accounting program. As stated above, such factually specific inquiries do not lend themselves to review in a basin-wide setting involving multiple reservoirs. Furthermore, unlike the issue of priority refill which is directly related to the quantity element of a water right, the issue of fill is purely an issue of administration.

Thus, the SRBA court explicitly stated that its designation of Basin-Wide Issue 17 did not include the question of when a water right is initially filled.

After briefing and oral argument, the SRBA court entered its Memorandum Decision on March 20, 2013. In this decision, the court concluded that a remark was not necessary because a storage water right that is filled cannot refill under priority before affected junior appropriators satisfy their water rights once. The court declined to address when the quantity element of a storage water right is considered filled. The Surface Water Coalition and the Boise Project Board timely appealed this decision.

## II. ANALYSIS

The rights at issue in this case are storage water rights. Storage water is water held in a reservoir and intended to assist the holders of the water right in meeting their decreed needs. *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 878, 154 P.3d 433, 449 (2007). "One may acquire storage water rights and receive a vested priority date and quantity, just as with any other water right." *Id.*; I.C. § 42-202. Historically, water rights have been appropriated in one of two ways in Idaho:

> Under the constitutional method of appropriation, appropriation is completed upon application of the water to the beneficial use for which the water is appropriated. When following the constitutional method, one must depend upon actual appropriation, that is to say, actual diversion and application to beneficial

5

use. Under the statutory method of appropriation, the appropriation is not complete and a license will not issue until there is proof of application to beneficial use for the purpose for which it was originally intended. Under either the constitutional or statutory method of appropriation, the appropriator must apply the water to a beneficial use in order to have a valid water right in Idaho. Since 1971 a party seeking a surface water right must file an application with the IDWR, obtain a permit, and perfect that right by obtaining a license.

*United States v. Pioneer Irr. Dist.*, 144 Idaho 106, 110, 157 P.3d 600, 604 (2007) (internal quotations and citations omitted).

A storage water right entitles the appropriator to divert, impound, and control water from a natural watercourse by means of a diversion structure such as a dam. *See Washington Cnty. Irr. Dist. v. Talboy*, 55 Idaho 382, 385, 43 P.2d 943, 945 (1935) (holding that when water is stored, it becomes "the property of the appropriators . . . impressed with the public trust to apply it to a beneficial use"). A water right is defined in terms of the priority, amount, season of use, purpose of use, point of diversion, and place of use. *Olson v. Idaho Dep't of Water Res.*, 105 Idaho 98, 101, 666 P.2d 188, 191 (1983); *see* I.C. § 42-1410. The purpose of use element of a storage water right generally contains at least two authorized purposes of use. The first authorizes the storage of water for a particular purpose (i.e., "irrigation storage," or "power storage"). The second authorizes the subsequent use of that stored water for an associated purpose, which is often referred to as the "end use" (i.e., "irrigation from storage," or "power from storage"). Each purpose of use is assigned its own quantity and period of use, which may or may not differ from one another. With respect to storage rights for irrigation, for example, it is typical for the "irrigation storage" purpose of use to be a year-round use (January 1 to December 31), and the "irrigation from storage" purpose of use to be limited to the irrigation season (e.g., March 15 to November 15).

Water diverted and stored pursuant to a storage water right need not be put to the end use immediately, but may be stored for a period of time prior to the end use:

> There is a fundamental difference with regard to the diversion and use of water from a flowing stream and a reservoir. In a stream if a user does not take out his water, it may be diverted by the other appropriators, because otherwise it flows on and is dissipated. But the very purpose of storage is to retain and hold for subsequent use, direct or augmentary, hence retention is not of itself illegal nor does it deprive the user of the right to continue to hold.

*Rayl v. Salmon River Canal Co.*, 66 Idaho 199, 208, 157 P.2d 76, 80 (1945).

6

This case arose out of disputes over the effect flood control releases have on storage water right holders; specifically, whether a remark authorizing storage water rights to refill space vacated for flood control should be included in storage water right decrees. In answering this question, the SRBA court concluded that a remark was not necessary because a storage water right that has been filled or satisfied cannot refill under priority before affected junior appropriators satisfy their water rights once. While the parties raise numerous issues with the court's decision on this basin-wide issue, two predominate: (1) whether the district court incorrectly held that the basin wide issue, as designated, involved only a question of law; and (2) whether the district court erred in failing to define "fill."

Before addressing the correctness of the SRBA court's decision, it is necessary to clarify what exactly was decided. From the outset, the question the Surface Water Coalition and the Boise Project Board wanted answered was whether flood control releases count against a storage water right. As the SRBA court noted, "[T]he crux of the issue [is] whether Idaho law authorizes the refill of a storage water right, under priority, where water diverted under that right is released for flood control." The court then went on to designate the basin-wide issue as: "Does Idaho law require a remark authorizing storage rights to 'refill,' under priority, space vacated for flood control?" While it may have seemed that the SRBA court was going to answer the question of whether flood control releases count towards the fill of a water right, the court specifically declined to address the issue of fill—an issue the court found would require factually specific inquiries not well situated for resolution in a basin-wide proceeding. The SRBA court intended Basin-Wide Issue 17 to be a purely legal question and stated that it would not consider "specific factual circumstances, operational history, or historical agreements associated with any particular reservoir." Accordingly, the court struck the Shelley Davis affidavit that the Boise Project Board submitted because the affidavit sought to develop a factual record.

The SRBA court ultimately held that a remark was not necessary under Idaho law because under the prior appropriation doctrine, a storage water right holder could not refill its right under priority once that right had already been satisfied once. Again, it may have seemed that the SRBA court answered the underlying question the parties wanted answered. However, the court went on to clarify that it was not answering the "more important" question of whether "water that is diverted and stored under a storage right counted towards the quantity of that right if it is used by the reservoir operator for flood control purposes." Thus, the SRBA court simply

7

held that where flood control releases already count towards the fill of a water right, that water right cannot be filled a second time following those flood control releases.

On appeal, the parties ask this Court, in various ways, to answer the question of whether flood control releases count towards the fill of a water right. The Boise Project Board, the Ditch Companies, and the Surface Water Coalition all argue that the question of whether and when a storage water right is satisfied or filled when storage space is vacated for flood control purposes is integral to answering Basin-Wide Issue 17. They also acknowledge that this question is at least in part factual in nature. Accordingly, the Boise Project Board argues that the SRBA court erred in precluding the development of a factual record.

It is clear from the record and how the SRBA court framed Basin-Wide Issue 17 that the court intended the issue to be purely legal. The SRBA court framed the issue as being whether "*Idaho law* require[s] a remark authorizing storage rights to 'refill,' under priority, space vacated for flood control." The question deals with the quantity element of a water right and essentially asks whether a water right includes the right to refill in priority following flood control or other releases. In its designation order, the court specifically declined to address the issue of fill, an issue which the court noted, would require a factual inquiry.

The only way the basin-wide issue in this case could be interpreted to include a question of fact is if defining "refill" requires a factual determination. The SRBA court took the literal meaning of refill (to fill again), which assumes a right has already been filled or satisfied once. Appellants argue that in the context of storage water rights "refill" has a more nuanced definition that requires first defining when the water right is actually filled or satisfied. The SRBA court believed the issue of when a water right is initially filled was a factual question and explicitly declined to address it as a basin-wide issue.[1] On the other hand, the question of whether Idaho law requires a remark regarding "refill" presents only a question of law, which is in line with the Surface Water Coalition's argument at the hearing on the Petition to Designate Basin-Wide

---

[1] In its Order Designating Basin Wide Issue, the court stated that in its view, "the Surface Water Coalition's proposed issues, which both pertain to how a storage right is initially filled, are not well situated for resolution in a basin-wide proceeding." These two issues were:

    [Whether] [t]he storage right holder determines when to divert water to storage in order to maximize the beneficial use of water under this right.

    [Whether] [t]he beneficial use under this right is fully satisfied when the water stored and available for beneficial use equals the capacity of the reservoir.

Then in its Memorandum Decision, the court stated that the question of whether "water that is diverted and stored under a storage right counted towards the quantity of that right if it is used by the reservoir operator for flood control purposes," is "an accounting issue which this basin-wide proceeding does not address."

Issue. The Coalition assured the judge that the proposed issue was "a fundamental legal question." Thus, the Coalition completely changed its tune once the issue was designated as a basin-wide issue. While the Boise Project Board never claimed that the issue was purely a legal question, it did assert that the issue could be decided "on a statewide basis rather than a reservoir-by-reservoir basis."

The parties' arguments on appeal—that the basin-wide issue presents a question of fact—ignores their previous assertions regarding the nature of the issue and the court's intent to designate the issue as strictly a legal question. From the outset the court explicitly declined to address the issue of whether water released for flood control purposes counts towards the initial fill of a water right. Thus, the argument that the court should have determined how the fill of a water right is calculated essentially amounts to an argument that the court erred in how it framed the basin-wide issue.

## A. Whether the SRBA court erred in its designation of Basin-Wide Issue 17.

The Idaho Rules of Civil Procedure (I.R.C.P.), Idaho Rules of Evidence (I.R.E.), and the Idaho Appellate Rules (I.A.R.) govern litigation in the SRBA. SRBA Administrative Order 1 (AO1) provides procedures to supplement the I.R.C.P., I.R.E., and I.A.R. "to the extent necessary to allow for the fair and expeditious resolution of all claims or issues in the SRBA." AO1 (1)(b). These procedural rules define a basin-wide issue as: "An issue designated by the Presiding Judge as potentially affecting the interests of a large number of claimants to the use of water within the SRBA and the resolution of which will promote judicial economy." AO1 (2)(c).

SRBA Administrative Order 1 (16)(a)(l) sets forth what should be included in a motion to designate a basin-wide issue and provides that any party to the adjudication "may file a Motion to Designate Basin-Wide Issue if that party believes an issue materially affects a large number of parties to the adjudication." *Id.* It further states that once a motion has been filed, "the motion to designate shall be decided by the Presiding Judge or a Special Master by Special Order of Reference." *Id.* The next section states that "[t]he Presiding Judge may enter a Notice of Intent to Designate Basin-Wide Issue." AO1 (16)(a)(2). The presiding judge is not required to designate an issue as basin-wide. Thus, the designation of a basin-wide issue is within the SRBA court's discretion.

The question the SRBA court designated and answered was the relatively straightforward question of whether a storage water right holder whose right has been satisfied once may refill

9

that right in priority following flood control releases. By declining to address the issue of fill, the SRBA court framed the basin-wide issue to only address the circumstance where water that is stored under a water right, but ultimately released for flood control purposes, counts against the fill of the storage water right. The question of whether in that circumstance, the water right holder may satisfy its water right a second time following the flood control release was not a question anyone appears to have wanted answered.[2] Given that Basin-Wide Issue 17 as designated was not the question the parties actually sought to have answered, addressing this issue in a basin-wide proceeding does not promote judicial economy. Accordingly, the SRBA court abused its discretion in designating the question of whether "Idaho law require[s] a remark authorizing storage rights to 'refill,' under priority, space vacated for flood control" as Basin-Wide Issue 17.

To clarify, we are not holding that the SRBA court abused its discretion in declining to designate the question of whether flood control releases count toward the "fill" of a water right as a basin-wide issue. Nor will this Court answer that question on appeal. We agree with the Boise Project Board and the SRBA that the question of when a storage water right is filled presents a mixed question of fact and law. Indeed, the complex and historically dense contents of the Shelley Davis affidavit, along with the parties' attempts to prove when a storage water right is filled by using reservoir-specific historical practices, support the conclusion that determining when a water right is filled requires the development of a factual record. There is an administrative procedure for fleshing out these factual interpretations if the SRBA court chooses to address the issue of fill on remand. This Court must be especially circumspect when deciding water law issues of first impression with potentially far-reaching consequences. Without a complete factual record and no injury alleged we decline to issue an advisory opinion on whether

---

[2] Indeed, the SRBA court's summary of the parties' arguments indicates the court understood that the question the parties wanted answered was whether flood control releases count towards the initial fill of a water right:

> The Petitioners assert that Idaho law permits a storage right holder to refill his storage right, under priority, when water diverted and stored under that right is used by the reservoir operator for flood control purposes. They assert the right to priority refill is inherent in the nature of a storage water right. Since they assert this is the state of Idaho law, it is their position that no remark is necessary on the face of a storage right to authorize such priority refill. The Petitioners contend that a storage right holder is entitled to put to the storage right's end use that volume of water set forth in the quantity element of the right. If water diverted and stored under a storage right is used for flood control purposes by the reservoir operator, then it is the Petitioners' position that the storage holder is entitled to refill that space, under priority, to ensure a sufficient quantity of storage water to complete the right's end use.

water stored under a storage right counts toward the fill of that right if it is used by the reservoir operator for flood control purposes.

**B. Determining when a water right is satisfied is within the Director's discretionary functions.**

Next, the Surface Water Coalition and the Boise Project Board argue that the Idaho Department of Water Resources (IDWR) Director's discretionary functions do not include the ability to determine when a water right is satisfied. The IDWR uses an accounting methodology to determine when a storage water right has been filled. In its Order Designating Basin-Wide Issue, the SRBA court determined that this accounting methodology was an administrative function which should be addressed on a case-by-case basis on a fully developed factual record and where the IDWR is a party. The Order also noted that "unlike the issue of priority refill which is directly related to the quantity element of a water right, the issue of fill is purely an issue of administration." Thus, the court stated that the IDWR's methodologies for determining when a water right is filled were beyond the scope of the basin-wide issue.

Appellants contend that the IDWR cannot decide whether a storage water right is satisfied using the IDWR's "accounting methodologies" because water rights are property rights and administration should only be governed by water right decrees. They are correct that a water right is a property right. *Clear Springs Foods, Inc. v. Spackman*, 150 Idaho 790, 797, 252 P.3d 71, 78 (2011). Storage water rights are entitled to the same protection as any other type of property right. *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res. (AFRD#2)*, 143 Idaho 862, 878, 154 P.3d 433, 449 (2007). Thus, the main issue is whether the Director is determining water rights, and therefore property rights, when he determines that a water right is "filled," or if the Director is just distributing water.

The IDWR has a statutory duty to allocate water. The Idaho legislature gave the IDWR's Director the power to make appropriation decisions in Idaho Code section 42-602: "[t]he director of the department of water resources shall have direction and control of the distribution of water from all natural water sources within a water district to the . . . facilities diverting therefrom." The Director also "shall distribute water in water districts in accordance with the prior

11

appropriation doctrine." [3] *Id.* This means that the Director cannot distribute water however he pleases at any time in any way; he must follow the law.

Idaho Code section 42-602 gives the Director broad powers to direct and control distribution of water from all natural water sources within water districts. *In re Idaho Dep't of Water Res. Amended Final Order Creating Water Dist. No. 170*, 148 Idaho 200, 211, 220 P.3d 318, 329 (2009). That statute gives the Director a "clear legal duty" to distribute water. *Musser v. Higgonson*, 125 Idaho 392, 395, 871 P.2d 809, 812 (1994) (*abrogated on other grounds by Rincover v. State Dep't of Fin.*, 132 Idaho 547, 976 P.2d 473 (1999)). However, "the details of the performance of the duty are left to the director's discretion." *Id.* Therefore, from the statute's plain language, as long as the Director distributes water in accordance with prior appropriation, he meets his clear legal duty. Details are left to the Director.

This Court has recognized the Director's discretion to direct and control the administration of water in accordance with the prior appropriation doctrine. In *Arkoosh v. Big Wood Canal Co.*, 48 Idaho 383, 283 P. 522 (1929), downstream natural flow water users sued to enjoin upstream users with junior storage water rights from interfering with the downstream users' rights. The downstream users claimed that they had the right to receive their decreed water whenever they chose and that the upstream users had to fulfill the downstream users' right from the stored water. *Arkoosh*, 48 Idaho at 388, 283 P. at 523. The original decree made the downstream users the judges of when they could use the water, which the Court noted was too broad in that "their right to receive water at any time they may demand it is a matter finally adjudicated." *Id.* at 395, 283 P. at 525. At the time the Commissioner of Reclamation occupied a similar position to the current Director, and the Court noted that this was a matter that should be determined by the Commissioner's department.[4] *Id.* at 395, 283 P. at 526. Similarly, this Court has stated that the Director "is charged with the duty of direction and control of distribution of the waters from the streams to the ditches and canals." *DeRousse v. Higginson*, 95 Idaho 173, 179, 505 P.2d 321, 327 (1973). More recently, this Court further articulated the Director's discretion: "Somewhere between the absolute right to use a decreed water right and an obligation not to waste it and to protect the public's interest in this valuable commodity, lies an area for the

---

[3] The legislature also provided for the Director to accomplish water distributions with watermasters who act in accordance with prior appropriation and are supervised by the Director. I.C. § 42-602.

[4] The Court also stated that "[t]he action of the commissioner in determining when water may be first beneficially used and in delivering or refusing to deliver water may be reviewed and controlled" in an action by an aggrieved party. *Id.* at 395–96, 283 P. at 526.

12

exercise of discretion by the Director." *AFRD#2*, 143 Idaho at 880, 154 P.3d at 451. Thus, the Director's clear duty to act means that the Director uses his information and discretion to provide each user the water it is decreed. And implicit in providing each user its decreed water would be determining when the decree is filled or satisfied.

This Court has also recognized the need for the Director's specialized expertise in certain areas of water law. For example, when analyzing the Director's duties in the context of groundwater pumping levels, this Court stated, "Because of the need for highly technical expertise to accurately measure complex ground water data the legislature has delegated to the IDWA the function of ascertaining reasonable pumping levels." *Baker v. Ore-Ida Foods, Inc.*, 95 Idaho 575, 584, 513 P.2d 627, 636 (1973). This Court also recognized the Director's broad powers and expertise in administering water rights in the context of granting applications for extensions of time. When holding that the Director properly granted a water right extension application, the Court noted that "[h]e cannot, in other words, be made to predict the future with powers other than his own reason and judgment" and "we ordinarily must vest the findings of the state engineer with the presumption of correctness." [5] *Keller v. Magic Water Co.*, 92 Idaho 276, 282, 441 P.2d 725, 731 (1968). The Court further explained that:

> [T]he state engineer is the expert on the spot, and we are constrained to realize the converse, that judges are not super engineers. The legislature intended to place upon the shoulders of the state engineer the primary responsibility for a proper distribution of the waters of the state, and we must extend to his determinations and judgment, weight on appeal.

*Id.* at 283, 441 P.2d 725, 732 (internal citations and quotations omitted).

Additionally, the Legislature has recognized the need for the Director's expertise. For instance, the Legislature provided that the Director "shall be: a licensed civil or agricultural engineer," a registered geologist, or a hydrologist holding a hydrology degree from an accredited college or university. I.C. § 42-1701(2). The legislature specified that the Director shall have "not less than five (5) years of experience" in one of those professions "and shall be familiar with irrigation and other water use practices in Idaho." *Id.* This reaffirms the need for the Director to have the technical expertise to properly administer water rights.

Here, the Director's duty to administer water according to technical expertise is governed by water right decrees. The decrees give the Director a quantity he must provide to each water

---

[5] At the time, the Director was known as the "State Engineer."

13

user in priority. In other words, the decree is a property right to a certain amount of water: a number that the Director must fill in priority to that user. However, it is within the Director's discretion to determine when that number has been met for each individual decree. In short, the Director simply counts how much water a person has used and makes sure a prior appropriator gets that water before a junior user. Which accounting method to employ is within the Director's discretion and the Idaho Administrative Procedure Act provides the procedures for challenging the chosen accounting method.

## III. CONCLUSION

We hold that the SRBA court abused its discretion in designating the question of whether "Idaho law require[s] a remark authorizing storage rights to 'refill,' under priority, space vacated for flood control" as Basin-Wide Issue 17. The SRBA court did not abuse its discretion by declining to address when the quantity element of a storage water right is considered filled or in stating that such a determination was within the Director's discretion.

Justices EISMANN, J. JONES, HORTON and SCHROEDER, Pro tem, **CONCUR.**