# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 44636

| | | |
|---|---|---|
| In Re: SRBA CASE NO. 39576 SUBCASE NOS. 65-23531 and 65-23532. | ) ) | |
| -------------------------------------------------------- | ) | |
| BLACK CANYON IRRIGATION DISTRICT, | ) ) | Boise, November 2017 Term |
| Appellant, | ) ) | 2018 Opinion No. 1 |
| v. | ) ) | Filed: January 2, 2018 |
| STATE OF IDAHO and SUEZ WATER IDAHO, INC., | ) ) ) | Karel A. Lehrman, Clerk |
| Respondents. | ) ) | |

---

Appeal from the Snake River Basin Adjudication, State of Idaho. Hon. Eric J. Wildman, District Judge.

District court judgment, <u>affirmed</u>.

Sawtooth Law Offices, PLLC, and McDevitt & Miller, Boise, for appellant Black Canyon Irrigation District. Andrew J. Waldera argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, for respondent State of Idaho. Michael C. Orr, Deputy Attorney General argued.

Givens Pursley, LLP, Boise, for respondent for Suez Water Idaho, Inc. Michael P. Lawrence argued.

---

BURDICK, Chief Justice.

This water rights appeal flows from two consolidated subcases, numbers 65-23531 and 65-23532, litigated in the Snake River Basin Adjudication (SRBA). The subcases concern the United States' late claims (Late Claims) filed in January 2013, which assert "supplemental beneficial use storage water rights" claims under the constitutional method of appropriation to store water in priority after flood-control releases. The special master recommended that the

1

State's motion for summary judgment be granted, concluding the Late Claims should be disallowed because, as the Director of the Idaho Department of Water Resources (Director) recommended, the Late Claims assert rights that had not been claimed when the underlying water rights were adjudicated and decreed. Alternatively, the special master concluded the Late Claims should be disallowed because, as intervenor Black Canyon Irrigation District (BCID) asserted, the decreed water rights already authorize the rights the Late Claims now assert, and hence, the Late Claims are unnecessary. The district court agreed with the special master insofar as the Late Claims were precluded. However, the district court rejected the special master's alternative recommendation that the Late Claims were duplicative of the rights already decreed and unnecessary. The district court entered judgment reflecting these conclusions. BCID timely appeals and we affirm the district court for the reasons below.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The United States has been decreed rights to 700,000 AFY in Cascade Reservoir, and 163,000 AFY in Deadwood Reservoir. These water rights were decreed in the Payette Adjudication, and when that adjudication was consolidated with the SRBA, they were decreed again in the SRBA. The Payette Adjudication and the SRBA were both general adjudications.[1] No objection was made to the water rights as they were decreed in the Payette Adjudication and the SRBA.

The specific decrees provide in relevant part as follows[2]:

| Right | Reservoir | Purpose | Period of Use | Quantity | Priority |
|-------|-----------|---------|---------------|----------|----------|
| 65-2927A | Cascade | Irrigation Storage | 01-01 to 12-31 | 697,500 AFY | 12/24/1937 |
| | | Irrigation from Storage | 01-01 to 12-31 | 697,500 AFY | 12/24/1937 |

[1] " 'General adjudication' means an action both for the judicial determination of the extent and priority of the rights of all persons to use water from any water system within the state of Idaho that is conclusive as to the nature of all rights to the use of water in the adjudicated water system, except as provided in section 42-1420, Idaho Code, and for the administration of those rights." I.C. § 42-1401A(5).

[2] As relevant to understanding the tables that follow in the text above, we have previously explained:

> The purpose of use element of a storage water right generally contains at least two authorized purposes of use. The first authorizes the storage of water for a particular purpose (i.e., "irrigation storage," or "power storage"). The second authorizes the subsequent use of that stored water for an associated purpose, which is often referred to as the "end use" (i.e., "irrigation from storage," or "power from storage"). Each purpose of use is assigned its own quantity and period of use, which may or may not differ from one another. With respect to storage rights for irrigation, for example, it is typical for the "irrigation storage" purpose of use to be a year-round use (January 1 to December 31), and the "irrigation from storage" purpose of use to be limited to the irrigation season (e.g., March 15 to November 15).

*In re SRBA*, 157 Idaho at 389, 336 P.3d at 796.

| Subcase | Reservoir | Purpose | Period of Use | Quantity | Priority |
|---------|-----------|---------|---------------|----------|----------|
| | | Power Storage | 01-01 to 12-31 | 697,500 AFY | 12/24/1937 |
| | | Power from Storage | 01-01 to 12-31 | 697,500 AFY | 12/24/1937 |
| 65-2927B | Cascade | Municipal Storage | 01-01 to 12-31 | 2,500 AFY | 12/24/1937 |
| | | Municipal from Storage | 01-01 to 12-31 | 2,500 AFY | 12/24/1937 |
| 65-9483 | Deadwood | Irrigation Storage | 01-01 to 12-31 | 163,000 AFY | 12/31/1926 |
| | | Irrigation from Storage | 04-01 to 11-01 | 163,000 AFY | 12/31/1926 |
| 65-2917 | Deadwood | Power Storage | 01-01 to 12-31 | 163,000 AFY | 12/31/1926 |
| | | Power from Storage | 01-01 to 12-31 | 163,000 AFY | 12/31/1926 |

The decrees grant the United States rights to water in specific quantities, which are "essentially equal to the active capacit[ies] of Cascade and Deadwood Reservoirs."

Cascade and Deadwood Reservoirs are on-stream reservoirs created by dams. Annual stream flows frequently exceed the Reservoirs' capacities, and accordingly, the United States, through the Bureau of Reclamation (BOR), manages flood-control releases. Flood-control releases generated disputes in the SRBA and led to Basin-Wide Issue 17, where water rights holders sought resolution of what "effect flood control releases have on storage water rights" where the decrees lack "refill" remarks. *See In re SRBA*, 157 Idaho 385, 390, 336 P.3d 792, 797 (2014). While Basin-Wide Issue 17 was being litigated in the district court, on January 31, 2013, the United States filed the Late Claims at issue here. The Late Claims assert "supplemental beneficial use storage water rights" claims under the constitutional method of appropriation as follows:

| Subcase | Reservoir | Purpose | Period of Use | Quantity | Priority |
|---------|-----------|---------|---------------|----------|----------|
| 65-23531 | Cascade | Irrigation Storage | 10-01 to 09-30 | 1,066,653 AFA | 09/30/1965 |
| | | Irrigation from Storage | 01-01 to 12-31 | 697,500 AFA | 09/30/1965 |
| | | Power Storage | 10-01 to 09-30 | 1,066,653 AFA | 09/30/1965 |
| | | Power from Storage | 01-01 to 12-31 | 697,500 AFA | 09/30/1965 |
| | | Municipal Storage | 10-01 to 09-30 | 1,066,653 AFA | 09/30/1965 |
| | | Municipal from Storage | 01-01 to 12-31 | 2,500 AFA | 09/30/1965 |
| 65-23532 | Deadwood | Irrigation Storage | 10-01 to 09-30 | 268,113 AFA | 09/30/1965 |
| | | Irrigation from Storage | 04-01 to 11-01 | 163,000 AFA | 09/30/1965 |
| | | Power Storage | 10-01 to 09-30 | 268,113 AFA | 09/30/1965 |
| | | Power from Storage | 01-01 to 12-31 | 163,000 AFA | 09/30/1965 |

The Late Claims surfaced after the Idaho Department of Water Resources (IDWR) shifted to a computerized water accounting system in 1993. That shift brought about the change from a "physical fill" system of accounting to a computerized "paper fill" system of accounting. The physical fill system is summarized as follows:

> Upon completion of the flood control releases, the reservoirs refill with spring runoff to the point of maximum physical fill. When the dam has refilled, typically in early June to mid-July, the stored water, including the "refill" water, is allocated to those holding storage rights in the reservoirs and is available for irrigation purposes.

In a paper fill system, by contrast,

> All water entering the . . . Reservoirs is counted toward the initial paper fill of the reservoirs. When flood control water is passed through the reservoirs the water passed for flood control is not deducted from the storage accounting of the reservoir, even though it is no longer physically stored in the reservoir.

The United States filed the Late Claims to assert "supplemental beneficial use storage water rights – separate water rights with a junior priority – which, in conjunction with existing storage water rights, would allow Reclamation to complete one physical fill of its reservoirs in years when it must release water for flood control." The district court granted the filing of the Late Claims on May 22, 2013. On December 30, 2013, the Director issued its reports recommending disallowance of the Late Claims for the sole reason that they were "not claimed in prior adjudication." On March 20, 2014, the United States timely objected, and on August 26, 2014, the district court entered an order retaining jurisdiction over the subcases pertaining to the Late Claims. On November 14, 2014, the district court granted Suez Water Idaho, Inc.'s (Suez)[3] motion to participate "on a limited basis for purposes of participating in proceedings related to the application of law" because that limited participation resulted in no "undue delay or prejudice to the existing parties." Thereafter, on January 9, 2015, the district court referred the subcases to the special master and assigned the power "to conduct all proceedings necessary to issue a recommendation . . . ."

On May 11, 2015, BCID moved to participate. BCID, an irrigation district, is the principal spaceholder in Cascade Reservoir and has beneficial interests in the United States' decreed water rights. *See United States v. Pioneer Irrigation Dist.*, 144 Idaho 106, 115, 157 P.3d

---

[3] Suez' former name was United Water Idaho, Inc. However, on November 9, 2015, it formally changed its name to Suez Water Idaho Inc. For consistency, the entity is referred to as Suez, even though it was actually named United Water when it moved to participate.

600, 609 (2007). The special master permitted BCID's participation. Unlike Suez, BCID was granted party status.

On August 25, 2015, the State moved for summary judgment, contending, in part, that the Late Claims were precluded. BCID responded by contending summary judgment should be granted in its favor as the non-movant, asserting the decreed water rights already authorize the rights the Late Claims now assert, and hence, the Late Claims are unnecessary. On November 19, 2015, the special master entered an order recommending the State's motion for summary judgment be granted, concluding the Late Claims were precluded. The special master did not reach BCID's contention that summary judgment should be granted in its favor as the non-movant. The parties then filed motions to alter or amend the special master's order. As relevant here, BCID contended the Late Claims were unnecessary because, as BCID asserted, the existing rights already authorize the water rights asserted in the Late Claims. On April 22, 2016, the special master affirmed his recommendation that the Late Claims were precluded; however, the special master agreed with BCID that the existing rights already authorize the water rights asserted in the Late Claims. Accordingly, the special master ultimately recommended disallowance of the Late Claims because (1) they were precluded, and (2) as "an additional basis for disallowance," they were unnecessary because the existing rights already authorize the water rights asserted in the Late Claims.

When the parties challenged different recommendations of the special master, the district court adopted the special master's recommendation that the Late Claims were precluded. However, the district court rejected the special master's "alternative basis for disallowance" recommendation, reasoning that the special master lacked the power to address BCID's arguments implicating the scope of the existing decrees. BCID timely appeals the district court's ruling that the Late Claims are precluded and rejection of the special master's "alternative basis for disallowance."

## II. ISSUES ON APPEAL

1.      Are the Late Claims precluded?
2.      Did the special master exceed the district court's orders of reference?
3.      Are the State and Suez entitled to attorney fees on appeal?

## III. STANDARD OF REVIEW

The district court may appoint a special master in any general adjudication and shall specify the special master's powers and duties in the order of reference.

5

Subcases referred to a special master are governed by the I.R.C.P. and the Idaho Rules of Evidence (I.R.E.).

The special master's findings which the court adopts are considered to be the findings of the court. The special master's conclusions of law are not binding upon the district court, although they are expected to be persuasive. To the degree that the district court adopts the special master's conclusions of law, they are also the conclusions of the court.

The question of compliance with the rules of procedure and evidence is one of law. This Court freely reviews conclusions of law.

*State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 736, 740, 947 P.2d 409, 413 (1997) (citations omitted).

This Court has explained that, when it reviews a summary judgment on appeal,

it does so under the same standards employed by the district court. "The fact that the parties have filed cross-motions for summary judgment does not change the applicable standard of review, and this Court must evaluate each party's motion on its own merits." Summary judgment is proper "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Idaho R. Civ. P. 56(c).[4] Where the case will be tried without a jury, "the trial court as the trier of fact is entitled to arrive at the most probable inferences based upon the undisputed evidence properly before it and grant the summary judgment despite the possibility of conflicting inferences." This Court freely reviews the entire record that was before the district court to determine whether either side was entitled to judgment as a matter of law and whether inferences drawn by the district court are reasonably supported by the record.

*Borley v. Smith*, 149 Idaho 171, 176–77, 233 P.3d 102, 107–08 (2010) (citations omitted).

### IV. ANALYSIS

**A.    The Late Claims are precluded.**

We first address whether *res judicata* bars the Late Claims. Whether *res judicata* applies is a question of law over which this Court exercises free review. *Ticor Title Co. v. Stanion*, 144 Idaho 119, 122, 157 P.3d 613, 616 (2007). *Res judicata* consists of claim and issue preclusion. *Hindmarsh v. Mock*, 138 Idaho 92, 94, 57 P.3d 803, 805 (2002).

Claim preclusion "bars a subsequent action between the same parties upon the same claim or upon claims 'relating to the same cause of action.' " Under this doctrine, a claim is also precluded if it could have been brought in the previous action, regardless of whether it was actually brought, where: (1) the original

---

[4] Effective July 1, 2016, Idaho Rule of Civil Procedure 56 was amended. The relevant portion of the rule now provides: "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a).

action ended in final judgment on the merits, (2) the present claim involves the same parties as the original action, and (3) the present claim arises out of the same transaction or series of transactions as the original action.

*Berkshire Invs., LLC v. Taylor*, 153 Idaho 73, 81, 278 P.3d 943, 951 (2012) (citations omitted).

We agree with the district court that the undisputed facts show that claim preclusion bars the Late Claims, making summary judgment proper on this issue. The first requirement—a final judgment on the merits—is satisfied. The Payette Adjudication resulted in a partial decree in January 1986, which was certified as a final judgment under Idaho Rule of Civil Procedure 54(b). That final judgment incorporated the relevant parts of the Director's Proposed Findings of Water Rights in the Payette River Drainage Basin, and those findings encompassed the water rights decreed in this case. As the Proposed Findings, which the Payette Decree incorporated, state:

> This recommended decree includes all of the rights established before October 19, 1977 to the waters of the Payette River and its tributaries including groundwater, and upon its adoption supercedes all prior judgments of the Court. Any water user who heretofore diverted surface water or groundwater from within the boundaries as described in Exhibit 1, or who owns lands to which previously established rights were appurtenant and who, upon being joined to this action, failed to claim such water rights has forfeited such rights as provided in Section 42-1411, Idaho Code.

Additionally, when the Payette Adjudication was consolidated with the SRBA, the SRBA court decreed the water rights in 2003 and certified the partial decrees as final judgments under Idaho Rule of Civil Procedure 54(b). The partial decrees were incorporated into the SRBA's final unified decree, which "is binding against all persons . . . ." No objection was made to the water rights as they were decreed in the Payette Adjudication and the SRBA. Instead, the Late Claims were not asserted until January 31, 2013.

Claim preclusion's second requirement looks to the identity of the parties. We note at the outset that we have never analyzed the identity of parties requirement as it arises in a general adjudication. Generally, claim preclusion reaches to "the same parties or their privies[.]" *Ticor Title*, 144 Idaho at 124, 157 P.3d at 618. We have acknowledged this principle as it applies to a private adjudication, *Hagerman Water Right Owners*, 130 Idaho at 742, 947 P.2d at 415 ("A Prior Decree Entered in a Private Adjudication is Binding Only Upon Parties and Privies to that Decree."), which finds support in the statutory definition of "private adjudication." I.C. § 42-1401A(8) (explaining that a private adjudication "binds only those persons joined in the action").

7

A general adjudication, by contrast, is "*conclusive* as to the nature of *all rights* to the use of water in the adjudicated water system, except as provided in section 42-1420,[5] Idaho Code, and for the administration of those rights." I.C. § 42-1401A(5) (emphases added). The Legislature's definition of general adjudication thus appears to give the identity of parties requirement little relevance, if any, in this context. The Legislature's distinction between a general adjudication and a private adjudication finds support in the various doctrines governing jurisdiction. Like a general adjudication under section 42-1401A(5), a final judgment in a proceeding where the court has *in rem* jurisdiction bars subsequent proceedings arising from the same transaction or occurrence already litigated, absent an identity of parties requirement, because *in rem* proceedings are brought against property, not parties. 50 C.J.S. *Judgments* § 1387 (2017); Restatement (Second) of Judgments § 30 (1982); Restatement (First) of Judgments § 79 cmt. d (1942) (stating that "[i]n proceedings in rem, however, persons who have not been named or specifically described in the proceedings, are nevertheless bound as to the subject matter by a valid judgment, although they are not parties"). A general adjudication, like an *in rem* proceeding, is brought against property, not parties. *See Nevada v. United States*, 463 U.S. 110, 144 (1983) ("[W]ater adjudications are more in the nature of *in rem* proceedings"); *Mont. Trout Unlimited v. Beaverhead Water Co.*, 255 P.3d 179, 194 (Mont. 2011) (concluding certain interpretation of statute "comport[ed] with the nature of water right adjudication as *in rem* proceedings"). Conversely, like a private adjudication under section 42-1401A(8), a final judgment in a proceeding where the court has either *in personam* or *quasi in rem* jurisdiction precludes only the "same parties or their privies" from bringing subsequent proceedings arising from the same transaction or occurrence already litigated. *See Ticor Title*, 144 Idaho at 124, 157 P.3d at 618; Restatement (First) of Judgments § 79 cmt. d (1942). A private adjudication, like *in personam* or *quasi in rem* proceedings, is brought to define the rights of specific parties. I.C. §

---

[5] Idaho Code section 42-1420 enumerates certain exceptions from the conclusive effect of a decree entered in a general adjudication. Although the exceptions are irrelevant to this case, the exceptions include: (1) "a water right for domestic use or stock watering use, specifically excluded from the general adjudication by court order;" (2) "a water right application for permit filed under chapters 2 or 15, title 42, Idaho Code;" (3) "a water right permit issued under chapters 2 or 15, title 42, Idaho Code, unless the director required the permit holder to file a notice of claim in accordance with subsection (7) of section 42-1409, Idaho Code;" (4) "a water right license issued under chapter 2 or 15, title 42, Idaho Code, if proof of beneficial use had not been filed on the date of commencement of the general adjudication, unless the director required the license holder to file a notice of claim in accordance with subsection (7) of section 42-1409, Idaho Code;" and (5) "a claim to a water right established under federal law, if the priority of the right claimed is later than and junior to the date of entry of the order commencing the general adjudication." I.C. § 42-1420(1). None of these apply here.

42-1401A(8) (stating that a private adjudication a "binds only those persons joined"); Restatement (First) of Judgments § 79 cmt. d (1942) ("In proceedings quasi in rem, as in proceedings in personam, only those persons who are parties as that term is herein used are thereby bound.").

However, we need not conclusively decide the applicability of the identity of parties inquiry in this context because it is so clearly satisfied in this case. The United States was a party to the Payette Adjudication and the SRBA, and in those adjudications, it was decreed the underlying water rights. BCID is a privy of the United States if it "derives [its] interest" from the United States, which, put another way, is to say that BCID "is in privity with a party to [the decrees—*i.e.*, the United States]." *Kite v. Eckley*, 48 Idaho 454, 459, 282 P. 868, 869 (1929); *accord Berkshire Invs.*, 153 Idaho at 81, 278 P.3d at 951; *Ticor Title*, 144 Idaho at 124, 157 P.3d at 618. We are satisfied that BCID derives its interest in the underlying water rights from the United States. For one, as BCID itself explains, it has a "beneficial interest" in the United States' water rights in Cascade Reservoir, as BCID is the principal spaceholder in Cascade Reservoir under a contract it has with the United States. In addition, while the United States holds nominal legal title to the underlying water rights decreed, this Court has held that irrigation entities, like BCID here, derive cognizable interests from water rights decreed to the United States since the irrigation entities act on behalf of the beneficial users. *United States v. Pioneer Irrigation Dist.*, 144 Idaho 106, 115, 157 P.3d 600, 609 (2007).

In *Pioneer Irrigation*, the United States filed claims for water rights in Arrowrock, Lucky Peak, and Anderson Ranch Reservoirs. *Id.* at 108, 157 P.3d at 602. Several irrigation entities, which had contracts with the United States for the storage and delivery of the water, filed overlapping claims for the same water rights. *Id.* The United States pointed out that the water rights had been decreed in its name, and so it contended the irrigation entities' claims were improper. *Id.* We disagreed based on the "connection between beneficial use of water and ownership rights," *id.* at 113, 157 P.3d at 607, and further explained:

> [I]t is clear that the entity that applies the water to beneficial use has a right that is more than a contractual right. The irrigation entities in this case act on behalf of those who have applied the water to beneficial use and repaid the United States for the costs of the facilities. The irrigation districts hold an interest on behalf of the water users pursuant to state law, consistent with the Reclamation Act and U.S. Supreme Court cases that were properly recognized by the SRBA Court.

*Id.* at 115, 157 P.3d at 609.

9

Under *Pioneer Irrigation*, BCID holds an interest on behalf of the water consumers or users. That interest is derived from the United States, which, acting through the Bureau of Reclamation, appears in the name and address sections of the decrees. BCID specifically acts on behalf of the water consumers or users under *Pioneer Irrigation*. In this regard, BCID explains it "acts as the distributer on behalf of the owners of the water[,]" and, further, it is "the Irrigation District acting on behalf of property owners who also are the beneficial owners of the water covered by the water rights existing or sought in this matter." Thus, assuming the identity of parties requirement applies here, it is satisfied.

We turn finally to claim preclusion's third requirement. This inquiry asks whether "the present claim arises out of the same transaction or series of transactions as the original action." *Berkshire Invs.*, 153 Idaho at 81, 278 P.3d at 951. "A critical component in deciding whether claims are the same for purposes of res judicata is that the subsequent or present claim must be one that arose out of the same cause of action and should have been litigated in the first suit." *Maravilla v. J.R. Simplot Co.*, 161 Idaho 455, 459, 387 P.3d 123, 127 (2016); *accord Joyce v. Murphy Land & Irrigation Co.*, 35 Idaho 549, 553, 208 P. 241, 242–43 (1922) (explaining that claim preclusion bars "every matter which might and should have been litigated in the first suit"). The Late Claims arise from the same transaction already litigated, as they assert "supplemental beneficial use storage water rights" that would work "in conjunction with existing storage rights[.]" And since the Late Claims assert a priority date of September 30, 1965, the Late Claims indisputably predate both the Payette Adjudication and the SRBA and should have then been asserted. *City of Pocatello v. Idaho*, 152 Idaho 830, 841, 275 P.3d 845, 856 (2012) (explaining that a beneficial use water "right dates from the application of the water to a beneficial use" (quoting *Crane Falls Power & Irrigation Co. v. Snake River Irrigation Co.*, 24 Idaho 63, 82, 133 P. 655, 661 (1913))). We conclude the district court was correct to observe, "If the late claims now asserted were ever valid, the plain language of the final judgment extinguished those claims and expressly barred any future assertion of those same claims."

BCID attempts to overcome claim preclusion's fatal resolution of the Late Claims by contending the Late Claims are excepted from claim preclusion. As it asserts, the Late Claims were not claims that should have been litigated in the earlier proceedings because they were not yet ripe. BCID is correct that, for claim preclusion to apply, the claim must be one that "might

and should have been litigated in the first suit." *Joyce*, 35 Idaho at 553, 208 P. at 242–43. More specifically, this Court has explained:

> Ordinarily, efficiency requires that all claims to relief based upon the same underlying transaction be pursued in a single action. This is because matters common to the several components of the action need be addressed only once, rather than several times in greater or lesser detail. However, sometimes a single trial covering all aspects of the case will be neither desirable nor feasible. Evidence bearing upon one aspect of a case may be unduly prejudicial with respect to another. Or certain matters may be ripe for trial while consideration of others would be premature.

*Duthie v. Lewiston Gun Club*, 104 Idaho 751, 758, 663 P.2d 287, 294 (1983) (quoting *Heaney v. Bd. of Trs. of Garden Valley Sch. Dist. No. 71*, 98 Idaho 900, 902–03, 575 P.2d 498, 500–01 (1978)).

According to BCID, "the administrative regime shift to 'paper fill' concepts in 1992/93 constituted new facts that were not, and could not be, ripe for adjudication during the pendency of the Payette Adjudication." In support, BCID cites to *U.S. National Bank Association v. Kuenzli*, 134 Idaho 222, 999 P.2d 877 (2000), to contend the Late Claims are not barred by claim preclusion. In *Kuenzli*, the Kuenzlis and Dennett entered into an agreement under which the Kuenzlis were to purchase Dennett's farm for $300,000. *Id.* at 224, 999 P.2d at 879. As part of that agreement, Dennett reserved an option allowing him to repurchase the farm at any time during escrow. *Id.* During escrow, the Kuenzlis learned that the farm had significantly appreciated in value and, accordingly, began moving to sell the property to a third party for $975,000. *Id.* Dennett swiftly responded by exercising his repurchase option. *Id.* The Kuenzlis disputed Dennett's right to do so, but Dennett obtained a judgment for specific performance in his favor. *Id.* The judgment was affirmed on appeal, *id.* (citing *Dennett v. Kuenzli*, 130 Idaho 21, 24, 936 P.2d 219, 222 (Ct. App. 1997)), and Dennett then "took possession of the property on May 15, 1997, and an escrow contract was signed by the Kuenzlis on June 10, 1997." *Id.*

Thirteen days later—on June 23, 1997—the Kuenzlis prepared a notice of default, alleging that Dennett was in default for failing to making three installment payments of $30,000 in 1994, 1995, and 1996, the three years after he exercised his repurchase option. *Id.* at 225, 999 P.2d at 880. Dennett then paid the installment payments, plus interest, "under protest" to the escrow agent, U.S. Bank. *Id.* U.S. Bank responded by lodging an interpleader action to determine who was entitled to the funds. *Id.* In the interpleader action, Dennett cross-claimed for a declaratory judgment that he was not in default, and sought "other relief." *Id.* The district court

ruled in Dennett's favor, concluding the only enforceable contract for installment payments was entered into on June 10, 1997, and nothing required Dennett to make installment payments for 1994, 1995, and 1996. *Id.*

When the Kuenzlis appealed, this Court addressed their argument that claim preclusion barred Dennett's cross-claim since it was not asserted in the initial proceeding. *Id.* at 226, 999 P.2d at 881. This Court explained that "[i]t would have been impossible" for Dennett to assert rights to the funds in the initial proceeding because the Kuenzlis did not assert he was in default "until after the earlier litigation had run its course." *Id.* Thus, Dennett's cross-claim was not then ripe, as his "right to the money deposited with U.S. Bank could not have been asserted during the earlier litigation." *Id.* And, while the Kuenzlis pointed to the Restatement's "transactional approach," this Court clarified that the Kuenzlis' reliance on the Restatement did not assist them. *Id.* The Restatement explains that:

> Material operative facts occurring after the decision of an action with respect to the same subject matter may in themselves, or in conjunction with the antecedent facts, comprise a transaction which may be made the basis of a second action not precluded by the first.

*Id.* (quoting Restatement (Second) of Judgments § 24, cmt. f (1982)). As this Court reasoned, "The Kuenzlis' notice of default and the resultant interpleader action are 'material operative facts' comprising a second 'transaction' and allowing a 'second action not precluded by the first.' " *Id.* Accordingly, claim preclusion did not bar Dennett's cross-claim. *Id.*

*Kuenzli* does not lend support to BCID in this case. In *Kuenzli*, the dispute over the funds did not arise until the first action resolved. In fact, the resolution of the first action held an integral role in creating the dispute over the funds because, had Dennett not prevailed in the first action, he would not have been able to exercise the repurchase option, and the Kuenzlis would have sold the property to the third party for a big profit. Here, by contrast, the Late Claims arose before both the Payette Adjudication and the SRBA. The Late Claims assert "supplemental beneficial use storage water rights" under the constitutional method of appropriation, with a priority date of September 30, 1965.[6] The Late Claims thus required proof "with definite evidence" that the claimed water was actually diverted and beneficially used at that time. *City of*

---

[6] We note that in 1971, the Legislature "amended Idaho Code §§ 42-103 and 42-201 to require compliance with the statutory application, permit, and license procedure in order to acquire new water rights." *Joyce Livestock Co. v. United States*, 144 Idaho 1, 7, 156 P.3d 502, 508 (2007); *accord Pioneer Irrigation*, 144 Idaho at 110, 157 P.3d at 604.

*Pocatello*, 152 Idaho at 841–42, 275 P.3d at 856–57; *accord Joyce Livestock Co. v. United States*, 144 Idaho 1, 8, 156 P.3d 502, 509 (2007) ("The two essentials for obtaining a water right under the constitutional method were typically diversion and application to a beneficial use."). This analysis is "focused purely on the actions of the appropriator[.]" *Idaho Power Co. v. Idaho Dep't of Water Res.*, 151 Idaho 266, 275, 255 P.3d 1152, 1161 (2011). Therefore, it "would [not] have been impossible . . . to have claimed the disputed [water rights]" in the earlier adjudications because the Late Claims are clear that the two key elements—diversion and beneficial use—both predate the earlier adjudications. *But cf. Kuenzli*, 134 Idaho at 226, 999 P.2d at 881. Accordingly, the district court was correct to recognize that, "If the Late Claims have any merit now . . . , that same merit must have existed during the Payette Adjudication" and the SRBA.

Nor are we persuaded by BCID's argument that only with the advent of computerized accounting did it have reason to believe proceedings to address flood-control administration were necessary. Three threshold considerations invalidate this argument. First, this argument erroneously attempts to trade *Kuenzli*'s clear "impossible to bring" standard for an anomalous "did not foresee the need to bring" standard. Second, this Court has been very clear that "*[r]es judicata* precludes the relitigation of the same claim even if there is new evidence to support it." *Taylor v. Riley*, 162 Idaho 692, 703, 403 P.3d 636, 647 (2017) (citing *Wolfe v. Farm Bureau Ins. Co.*, 128 Idaho 398, 403, 913 P.2d 1168, 1173 (1996)). Third, BCID's effort to ascribe operative significance to IDWR's accounting system ignores the bedrock principle that the constitutional method of appropriation is "focused purely on the actions of the appropriator[.]" *Idaho Power Co.*, 151 Idaho at 275, 255 P.3d at 1161. IDWR's accounting system is therefore irrelevant in this proceeding.[7]

Moreover, the propriety of BCID's reliance on IDWR's accounting system is belied by the record. Displayed in the record are certain water claims filed in June 1983, seeking a "[s]econd refill right" in American Falls Reservoir, a right permitting "actual multiple fill or refill of [Palisades] Reservoir[,]" a right to provide "optimum Project benefits including flood control" in Island Park Reservoir, and a right permitting "refill or second fill of [Arrowrock] reservoir capacity[.]" The record thus shows that issues of refill rights and flood-control

---

[7] Additionally, BCID's attempt to inject issues of accounting in this case contravenes our precedent. *In re SRBA*, 157 Idaho 385, 394, 336 P.3d 792, 801 (2014) ("Which accounting method to employ is within the Director's discretion and the Idaho Administrative Procedure Act provides the procedures for challenging the chosen accounting method.").

administration were previously relevant and should have been raised during the Payette Adjudication or the SRBA, both of which post-dated the claims just referenced. *Cf. Rangen, Inc. v. Idaho Dep't of Water Res.*, 159 Idaho 798, 806, 367 P.3d 193, 201 (2016) ("If Rangen wanted its water rights to be interpreted differently, it should have timely asserted that in the SRBA."). These issues were nonetheless not raised until this proceeding. As such, the decrees authorize specific, measurable quantities of water, not a certain number of reservoir "fills." The quantities set forth in the decrees are binding and must control. It cannot now reasonably be contended that the specific, measurable quantities of water decreed are anything less than determinative, as the record demonstrates that as far back as 1934, it was recognized that decreed water rights would "no doubt be governed by the amount set out in the . . . decree[.]"

In sum, we conclude the undisputed facts show that claim preclusion bars the Late Claims, making summary judgment proper on this issue. We thus hold that claim preclusion bars BCID in this proceeding from seeking to litigate issues of refill and flood-control administration, and from attempting to supplement the water rights already decreed with quantities of water in excess of the quantities already decreed. *See supra* Part I. Absent BCID undertaking appropriate proceedings to set aside a final judgment under Idaho Rule of Civil Procedure 60(b), we emphasize that the decrees are conclusive and final, which comports our general reluctance to allow already-decreed water rights to be relitigated. *See, e.g.*, *City of Blackfoot v. Spackman*, 162 Idaho 302, ___, 396 P.3d 1184, 1190 (2017) ("Furthermore, it is equally clear from the plain language of the decree that recharge is not listed as an authorized use under the purpose of use element of 181C. Claiming, at this stage, that recharge is an authorized use of 181C, is nothing more than an impermissible collateral attack . . . ."); *Idaho Ground Water Assoc. v. Idaho Dep't of Water Res.*, 160 Idaho 119, 128, 369 P.3d 897, 906 (2016) ("Allowing IGWA to collaterally attack this determination would severely undermine the purpose of the SRBA and create uncertainty in water rights adjudicated in that process."); *Rangen*, 159 Idaho at 806, 367 P.3d at 201 ("Any interpretation of Rangen's partial decrees that is inconsistent with their plain language would necessarily impact the certainty and finality of SRBA judgments and, therefore, requests for such interpretations needed to be made in the SRBA itself."); *State v. Nelson*, 131 Idaho 12, 16, 951 P.2d 943, 947 (1998) ("Finality in water rights is essential."). Finality is for good reason, especially in water law; otherwise, the approximate $94 million the State expended in judicial and administrative costs during the SRBA would be jeopardized as mere wasteful expenditures.

14

*See* Ann Y. Vonde et al., *Understanding the Snake River Basin Adjudication*, 52 Idaho L. Rev. 53, 56 (2016).

Because we affirm the district court's ruling on summary judgment that claim preclusion bars the Late Claims as a matter of law, we need not reach whether the Late Claims are additionally precluded by issue preclusion, the Payette Decree, and Idaho Code section 42-1411 (1969).

**B.      The special master exceeded the district court's orders of reference.**

We turn now to BCID's challenge of the district court's rejection of the special master's "alternative basis" recommendation. The district court had discretion to appoint a special master "by an order of reference pursuant to I.R.C.P. 53." SRBA Admin. Order 1 § 9(a); *accord* I.C. § 42-1422(1). In so doing, the district court was required to "specify the powers and duties of a special master in the order of reference." I.C. § 42-1422(2). The district court's specification of the special master's powers and duties is critical, given that "the power of the master is determined by his order of reference, and he possesses no power to hear controversies or perform acts outside the scope of the order." *Olson v. Idaho Dep't of Water Res.*, 105 Idaho 98, 100, 666 P.2d 188, 190 (1983); *accord* I.R.C.P. 53(c) (2015). "The order of reference can be broad, or limited," but the special master cannot stray from it. *Olson*, 105 Idaho at 100, 666 P.2d at 190. Since "[t]he question of compliance with the rules of procedure and evidence is one of law," *State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 736, 740, 947 P.2d 409, 413 (1997), we conduct free review of whether the special master exceeded the order of reference.

In determining whether the special master exceeded the order of reference, we are mindful that the scope of the order of reference, which varies in each case, is outcome determinative of this inquiry. For example, we have previously recognized that an order of reference may be broad enough to allow a special master to recommend an award of attorney fees. *In re SRBA*, 149 Idaho 532, 542, 237 P.3d 1, 11 (2010). In *In re SRBA*, the special master was empowered to "schedule and hear dispositive and nondispositive motions of any party." *Id.* While the appellants challenged the special master's authority to recommend an award of attorney fees, we rejected that argument because appellants could "point to no specification or limitation in the presiding judge's order of reference to the special master . . . that would preclude him from making a recommendation on attorney fees." *Id.* On the other hand, we have recognized that an order of reference may be limited enough to preclude a special master from

enforcing a settlement agreement. *Olson*, 105 Idaho at 100, 666 P.2d at 190. In *Olson*, the special master was enlisted to "hear said specific objections filed by the objectors . . . ; and [wa]s fully empowered to make Findings of Fact and Conclusions of Law and do everything necessary to proceed to hear such objections[.]" *Id.* The special master, however, ultimately resolved a contract dispute between the parties by holding that a stipulated settlement agreement was enforceable. *Id.* Based on the limited scope of the order of reference, this Court held that the special master in *Olson* "was not empowered to resolve a contract dispute . . . ." *Id.*

Here, the district court correctly held that the special master exceeded the district court's orders of reference by concluding the Late Claims were unnecessary as duplicative of the existing decrees. The special master's recommendation in this regard flowed from BCID's argument that it "believe[d] that in a 'spill and fill' basin such as Basin 65, the BOR's existing storage rights authorize the continued priority storage of the 'second-in' water." The special master resolved this argument in BCID's favor and explained "that prior to the adoption of the new accounting procedures in 1993, the existing storage rights for Cascade and Deadwood Reservoirs were considered satisfied by the contents of the Reservoirs at the time of maximum physical fill." As the special master continued, "This same factual finding also leads to the conclusion that at the time relevant to the alleged creation of the subject water rights (1965), the water claimed by the Bureau to have been appropriated was not subject to appropriation because it had already been appropriated and was being stored in the Reservoirs under the authority of the existing storage rights." As the special master concluded, "water released to maintain vacant reservoir space to be used for flood control was not stored pursuant to the existing storage rights[.]"

The special master's recommendation in this regard was not binding on the district court. *Hagerman Water Right Owners*, 130 Idaho at 740, 947 P.2d at 413. The district court properly rejected this recommendation because, by conducting the analysis above, the special master exceeded the district court's orders of reference. The orders of reference granted the limited power for the special master to "preside over the matter and to conduct all proceedings necessary to issue a recommendation" based on the Director's reports, which recommended the Late Claims be disallowed for the sole reason they "were not claimed in prior adjudication." The special master was not, for example, broadly empowered to "hear dispositive and nondispositive motions of any party." *See In re SRBA*, 149 Idaho at 542, 237 P.3d at 11. Instead, the special

16

master was narrowly tasked with the threshold question of whether the Late Claims were precluded. The special master expressly recognized so much, stating that "[t]he Director's Report for the above-captioned subcases does not implicate the existing storage rights for Cascade and Deadwood Reservoirs and, therefore, does not provide the means or necessity to provide a collateral interpretation of the existing water rights within the context of these subcases." Even so, the special master strayed beyond this threshold question by, as the district court correctly observed, "delving into the administration of the previously decreed water rights" to conclude the Late Claims were unnecessary as duplicative of the existing rights. This analysis signifies error, as the existing rights were not at issue. Rather, it was the "supplemental beneficial use storage water rights" claimed in the Late Claims that were at issue. In addition, the administration of the existing water rights had no basis in the Director's reports and was raised for the first time before the special master. The orders of reference clearly instructed the special master to conduct the proceedings necessary to issue a recommendation, but the special master's "additional basis for disallowance" is neither necessary nor relevant to the Director's reports. *Cf. Olson*, 105 Idaho at 100, 666 P.2d at 190 ("[T]he special master in this case was empowered to hear the objections to the department's proposed findings of water rights and to make findings of fact and conclusions of law on those objections. The master was not empowered to resolve a contract dispute between the parties.").

Further, the special master's "additional basis" recommendation improperly encroaches on the Director's discretionary duty of administering water. It is well settled that the administration of water is a matter committed to the Director's discretion. *E.g.*, I.C. § 42-602 ("The director of the department of water resources shall have direction and control of the distribution of water from all natural water sources within a water district to the canals, ditches, pumps and other facilities diverting therefrom."); *accord In re SRBA*, 157 Idaho 385, 393–94, 336 P.3d 792, 800–01 (2014); *Am. Falls Reservoir Dist. No. 2 v. Idaho Dep't of Water Res.*, 143 Idaho 862, 880, 154 P.3d 433, 451 (2007); *Musser v. Higginson*, 125 Idaho 392, 395, 871 P.2d 809, 812 (1994), *abrogated on other grounds by Rincover v. State Dep't of Fin., Secs. Bureau*, 132 Idaho 547, 549, 976 P.2d 473, 475 (1999). The special master here, however, instructed the Director how to count and administer water under the decrees. As the special master concluded, "therefore water released to maintain vacant reservoir space to be used for flood control was not stored pursuant to the existing storage rights[.]" This conclusion—in effect, telling the Director

how to count water when determining whether the decreed quantities are satisfied—was erroneous, as BCID has not availed itself to the proper administrative procedure to challenge the Director's method of accounting. *See In re SRBA*, 157 Idaho at 394, 336 P.3d at 801 (explaining that "the Idaho Administrative Procedure Act provides the procedures for challenging the chosen accounting method").[8]

In sum, the district court correctly concluded the special master exceeded the district court's orders of reference by making the "alternative basis" recommendation.

### C. We decline to award attorney fees on appeal.

BCID expressly does not request attorney fees on appeal. The State and Suez request attorney fees on appeal under section 12-117, which provides in relevant part:

> Unless otherwise provided by statute, in any proceeding involving as adverse parties a state agency or a political subdivision and a person, the state agency, political subdivision or the court hearing the proceeding, including on appeal, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

I.C. § 12-117(1).

Based on the above, the State and Suez are the prevailing parties on appeal. However, BCID did not act without a reasonable basis in fact or law. Instead, BCID advanced complex arguments in good faith. We therefore decline to award attorney fees on appeal.

## V. CONCLUSION

For the reasons above, we affirm the district court's rulings that claim preclusion bars the Late Claims and that the special master exceeded the district court's orders of reference. We award costs on appeal, but not attorney fees, to the State and Suez.

Justices HORTON, BEVAN, and WALTERS, J., Pro Tem, **CONCUR.**

---

[8] While our colleague who concurs in part and dissents in part writes separately to express that we are piling dicta upon dicta, we do no such thing. In *In re SRBA*, the parties appealed whether the district court abused its discretion by declining to address when the quantity element of a storage water right is filled. *Id.* at 389, 336 P.3d at 796. We held that there was no abuse of discretion. *Id.* at 393, 336 P.3d at 800. In reaching that conclusion, we applied the plain language of Idaho Code section 42-602 and our settled precedent, explaining that " 'the details of the performance of the duty are left to the director's discretion.' Therefore, from the statute's plain language, as long as the Director distributes water in accordance with prior appropriation, he meets his clear legal duty. Details are left to the Director." *Id.* (citation omitted). This basis of *In re SRBA*, in which we applied both statute and established case law, was essential to resolving the case and cannot be reduced to mere dicta. *But cf. State v. Hawkins*, 155 Idaho 69, 74, 305 P.3d 513, 518 (2013) ("If the statement is not necessary to decide the issue presented to the appellate court, it is considered to be dictum and not controlling."). Today, declining to ignore the special master's error, we apply these settled principles to explain why it was improper for the special master to revisit the underlying decrees.

BRODY, Justice, concurring in part and dissenting in part.

I agree with the result reached by the Court, but I respectfully dissent from that portion of the opinion wherein the Court concludes that the special master's alternative basis recommendation improperly encroached on the Director's discretionary duty of administering water. The Court's discussion of this issue is dicta and should be left for another day.

The Court first addressed whether water released for flood control counts against the fill of a storage right in its decision on Basin-wide Issue 17. *See In re SRBA*, 157 Idaho 385, 392, 336 P.3d 792, 797, 799 (2014). In that decision, the Court held that the SRBA court abused its discretion in the way that it framed the issue. *Id.* The Court's decision did not end there, however. The Court went further, concluding that the SRBA court did not abuse its discretion in declining to address when a storage right is "filled" or when it concluded that such a determination was within the director's discretion. *See id.* at 394, 336 P.3d at 801. This portion of the Court's opinion was dicta.

Today, the Court cites the dicta from its Basin-wide Issue 17 decision to support its assertion that the director's accounting methodology is a discretionary call that must be challenged in an administrative proceeding. This is a complex issue. Did the special master's recommendation effectively tell the Director *how* to count water as the Court asserts? I agree that the "how" of counting water can require scientific expertise and is the subject of much regulation. On the other hand, did the special master's recommendation effectively tell the Director *what* water to count based on the law and the decrees entered by the SRBA court? The line between discretionary calls best made by agencies with expertise and legal ones best made by the courts can be blurry. The Court should draw that line when the case squarely presents the issue.